ROBERT C. CANTU *vs.* THE ST. PAUL COMPANIES & others.[1]

Suffolk. September 9, 1987. — November 3, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Attorney at Law*, Malpractice. *Negligence*, Attorney. *Limitations, Statute of.*

Malpractice claims brought against an attorney and his law firm by a former client, a physician against whom a medical malpractice judgment had been returned, were barred by the three-year statute of limitations, G. L. c. 260, § 4, where the physician's cause of action accrued, that is, he suffered "appreciable harm," upon a jury's verdict against him in an amount exceeding his primary insurance coverage, when he knew the defendant attorneys had not given timely notification to his excess liability carrier, and where, in addition, he had retained another attorney to advise him, all more than three years before the action against his former counsel was commenced. [55-58]

CIVIL ACTION commenced in the Superior Court Department on October 31, 1983.

The case was heard by *Charles M. Grabau*, J., on a motion for partial summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Mitchell H. Kaplan* (*Mark A. Michelson* with him) for the plaintiff.

*William A. McCormack* (*William G. Southard* with him) for the defendants.

LIACOS, J. On October 31, 1983, Robert C. Cantu, a physician, commenced this legal malpractice case in Suffolk County Superior Court against attorney Stephen A. Moore and Gaston

---

[1] St. Paul Fire & Marine Insurance Co., The Hartford Group, The Hartford Accident and Indemnity Company, Attorney Stephen A. Moore, and Gaston Snow & Ely Bartlett. The plaintiff's appeal relates only to his claims against Mr. Moore and Gaston Snow & Ely Bartlett.

Snow & Ely Bartlett (hereinafter Gaston Snow), the law firm of which Mr. Moore is a partner. The alleged legal malpractice arouse out of a medical malpractice case brought against Cantu by one of his former patients, Donna Zeller. The St. Paul Companies and St. Paul Fire & Marine Insurance Co. (hereinafter St. Paul Companies) were Cantu's primary insurers. They retained Gaston Snow to represent Cantu in that case.[2]

Cantu's complaint asserted four counts of legal malpractice against Gaston Snow: (1) Gaston Snow failed to inform Cantu that he should notify his excess insurance carrier; (2) Gaston Snow failed to notify Cantu's excess insurance carrier; (3) Gaston Snow failed to advise Cantu of settlement offers and negotiations; and (4) Gaston Snow failed to represent Cantu adequately at trial and on appeal.

On June 13, 1986, Gaston Snow filed a motion for partial summary judgment, asserting that most of Cantu's claims were barred by the three-year statute of limitations. G. L. c. 260, § 4.[3] After a series of motions, orders, judgments, and reconsiderations,[4] the judge allowed the defendants' motion for partial summary judgment and motion for entry of judgment. Cantu filed a notice of appeal on October 2, 1986, and this court allowed Cantu's application for direct appellate review. We affirm.

The relevant facts are these. In 1973, Cantu performed a surgical procedure on Zeller, and, during the course of the

---

[2] The facts in the medical malpractice case are set forth in some detail in *Zeller* v. *American Safety Razor Corp.*, 15 Mass. App. Ct. 919 (1983) (judgment for plaintiff against American Safety Razor and Cantu affirmed). In *Zeller* v. *Cantu*, 395 Mass. 76 (1985), this court affirmed a judgment ordering Cantu to pay 50% of the judgment procured by Zeller.

[3] General Laws c. 260, § 4 (1986 ed.), provides in pertinent part: "Actions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues."

[4] Both parties refer to a lengthy and complicated series of steps which led to the entry of judgment for the defendants. We need not set forth the details because the plaintiff raises no issues on appeal with respect to these procedures; nor do we think that any substantive rights were lost as a result of the rather confused procedural history of the case. See *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 127 (1982).

surgery, two surgical blades broke off. Despite Cantu's efforts to remove the pieces, the broken blades remained in Zeller's back. In April, 1975, Zeller sued the hospital where the surgery took place and American Safety Razor Corporation (ASR), the manufacturer of the blades. One year later, Cantu and his assistant were added as defendants.

The trial of Zeller's claim commenced on September 22, 1980. A verdict in favor of Zeller against Cantu and ASR in the amount of $1,500,000 was returned on October 3, 1980. The amount of the verdict far exceeded Cantu's primary insurance coverage provided by the St. Paul Companies. On that same date, Mr. Moore received notice that Cantu's excess liability carrier, The Hartford Accident and Indemnity Company (Hartford), likely would decline coverage on the ground of late notice. Mr. Moore told Cantu of Hartford's position at the same time that he advised Cantu of the jury's verdict.

Three days later, on October 6, 1980, Cantu retained, at his own expense, Attorney James Nye to advise him on his possible personal financial exposure in connection with the Zeller case. Hartford notified Cantu directly on October 8, 1980, that he was not covered for the Zeller judgment because he had not given Hartford timely notice of Zeller's claim.

Gaston Snow continued to represent Cantu. Posttrial motions in the Zeller case were filed and argued. The judge, after ordering remittitur in the amount of $750,000, entered judgment on November 13, 1980. On November 26, 1980, Gaston Snow filed notice of appeal in the Zeller case on behalf of Cantu. Gaston Snow's active representation of Cantu ended in January, 1981. The judgment after remittitur was affirmed on appeal in January, 1983. *Zeller* v. *American Safety Razor Corp.*, 15 Mass. App. Ct. 919 (1983). Cantu filed the present legal malpractice action on October 31, 1983.

The parties agree that the three-year statute of limitations set out in G. L. c. 260, § 4, controls. Thus, if Cantu's cause of action against Moore and Gaston Snow accrued prior to October 31, 1980, more than three years before he filed his complaint in this case, his case would be barred.

In 1974, this court held that in legal malpractice cases a cause of action does not accrue until the client discovers, or reasonably should discover, the malpractice. *Hendrickson* v. *Sears*, 365 Mass. 83, 89-90 (1974). In *Hendrickson*, we left open the question whether a cause of action would accrue on discovery, if there had not been appreciable harm. *Id.* at 91. In *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978), we held that a cause of action for negligent design of a product does not accrue until the time of injury or harm. Later, we held that a cause of action accrues on discovery of appreciable harm even though the extent of the harm is not fully known. *Olsen* v. *Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 175 (1983). See *Salin* v. *Shalgian*, 18 Mass. App. Ct. 467, 470 (1984).

We also addressed the question of the requirement of appreciable harm as a prerequisite to the accrual of a negligence action in *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265 (1985). In that case, an employee of an independent contractor was injured while painting one of the company's (Mass. Electric's) transmission towers, and he sued the company. The law firm of Fletcher, Tilton & Whipple, P.C., was hired by Mass. Electric's primary insurance carrier to defend Mass. Electric. During the course of litigation, an employee of Mass. Electric found some field investigation notes which were injurious to Mass. Electric's case. After showing the notes to Mass. Electric's attorney, the employee tore up the notes and discarded them in a waste basket. The attorney did not retrieve the notes. One week later, after reviewing the Canons of Ethics, the attorney and the law firm informed the independent contractor's attorney and the attorney for Mass. Electric's excess insurance carrier as to the substance and destruction of the notes. The case between the independent contractor and Mass. Electric was settled. Mass. Electric's excess carrier paid $625,000 of the $725,000 settlement under a reservation of rights. The excess carrier then sued Mass. Electric, alleging breach of the cooperation clause in the insurance policy, due to the destruction of the documents, claiming that this act forced the excess carrier to pay a larger sum in settlement.

Mass. Electric settled with the excess carrier and then brought a legal malpractice case against Fletcher, Tilton & Whipple, P.C.

The question on appeal was whether the cause of action against the attorney and the law firm accrued when the excess carrier brought suit or when Mass. Electric's suit with the excess carrier was settled. Mass. Electric discovered the alleged negligence, the destruction of the notes, immediately. But Mass. Electric suffered no harm at the time of the alleged negligence. We stated that a cause of action for malpractice "does not accrue until a plaintiff knows or reasonably should know that it has sustained appreciable harm as a result of a defendant's negligence." *Id.* at 268. We concluded that Mass. Electric sustained appreciable harm "at least by the time [the excess insurer's lawsuit] was commenced," reasoning that "it was then clear that [Mass. Electric] would incur substantial legal expenses in the defense of a claim that was based in part on the alleged negligent conduct of their attorneys . . . ." *Id.* In our view, this language is dispositive of the claims of Cantu.

Cantu argues, however, that he did not know of the nature and extent of the harm caused by the defendants until the conclusion of the appeal of the *Zeller* case in 1983. Only when the harm became irremediable, contends Cantu, did he suffer appreciable harm. As we have noted, similar arguments previously have been rejected. In *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C., supra* at 268-269, we rejected an argument that the harm does not accrue until the case finally is concluded (settlement). The Appeals Court has taken a similar position. *Salin* v. *Shalgian, supra* (notice of claim sufficient without need for judgment by Land Court). In *Olsen* v. *Bell Tel. Laboratories, Inc., supra,* we held that the full extent of the harm need not be known in order that the cause of action accrue. Here, Cantu knew that the defendants failed to give timely notice to Hartford. He knew that the jury verdict exceeded his primary coverage. As a result, Cantu retained Mr. Nye and incurred legal fees. At that point, the necessary coalescence of discovery and appreciable harm occurred. It is of no import whether Cantu won on appeal; he had been harmed by having to pay legal fees to Mr. Nye. Accord *Levin* v. *Berley,*

728 F.2d 551, 554 (1st Cir. 1984) (retention of another attorney is harm in the form of additional legal fees); *Whitcomb* v. *Pension Dev. Co.,* 808 F.2d 167, 170-171 (1st Cir. 1986) (same as to retention of accountants).

Cantu next urges this court to adopt the continuing representation doctrine. Pursuant to this doctrine, which is the law in several jurisdictions, see, e.g., *Greene* v. *Greene,* 56 N.Y.2d 86, 93-94 (1982); *McCormick* v. *Romans,* 214 Va. 144, 148-149 (1973), the statute of limitations may be tolled while the defendant attorney continues to represent the plaintiff. The doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered."[5] *Greene* v. *Greene, supra* at 94.

When he retained Mr. Nye, Cantu demonstrated that he had questioned and had assessed Gaston Snow's representation of his interest and found it to be wanting. The innocent reliance which the continued representation doctrine seeks to protect is not raised by the facts in this case, and hence we need not reach this issue.

The necessary coalescence of discovery and appreciable harm occurred in early October, 1980. This was more than three years prior to the filing of this lawsuit. The judge concluded properly that the action is barred by the statute of limitations.

*Judgment affirmed.*

---

[5] A similar argument that a statute of limitations should be tolled because of a plaintiff's continuing relationship with his employer was rejected in *Olsen, supra* at 176.