KEY TRUST COMPANY OF MAINE, A Maine Corporation engaged in the business of administering trusts, with a principal place of business in Portland, Maine, Plaintiff,

v.

DOHERTY, WALLACE, PILLSBURY AND MURPHY, P.C. and Paul S. Doherty, Defendants.

Civ. A. No. 91–30106–F.

United States District Court, D. Massachusetts.

Jan. 28, 1993.

Benjamin Rosales, Stephen B. Rosales, Rosales & Rosales, Boston, MA, for plaintiff.

Erik Lund, Cynthia C. Smith, Posternak, Blankstein & Lund, Boston, MA, for defendants.

MEMORANDUM REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

(Docket No. 32)

PONSOR, United States Magistrate Judge.

## I. INTRODUCTION.

The plaintiff, Key Trust Company of Maine ("Key Trust"), contends that it has been stuck with a tax bill of $115,000 as a result of the legal malpractice of the defendant attorney and his law firm. The defendants have moved for summary judgment on the ground that, if any legal malpractice occurred (which is denied), the plaintiff was on notice of it by 1986. Because this suit was not filed until 1991, the defendants argue that the action is barred by the applicable three-year statute of limitations. Since the court agrees, the motion will be allowed and the clerk will be ordered to enter judgment for the defendants.

---

1. The parties to this action have waived their right to proceed before a district judge and consented to have this magistrate judge conduct any and all further proceedings in the case, including the trial, and order the entry of judgment. Fed.R.Civ.P. 73, 28 U.S.C. § 636(c).

## II. FACTUAL BACKGROUND.

The following facts are undisputed.[2]

On December 18, 1963, David E. Harriman executed a revocable inter-vivos trust (the "Trust") and named Canal National Bank ("Canal"), plaintiff's predecessor, as Trustee. On July 9, 1964, Harriman executed a will, again naming Canal a co-executor. On April 5, 1975, Harriman died while domiciled in Massachusetts.

Following Harriman's death, defendant Doherty was retained by Canal to probate the estate. Doherty Affidavit at ¶.2. Canal, as noted above, wore two hats: one as co-executor of the Harriman estate, and the other as trustee to the Harriman Trust. The provisions of the trust stated that the trustee was authorized to pay the debts and the expenses of Harriman's estate, including all taxes. *See* Plaintiff's Exhibit B, Revocable Inter–Vivos Trust of David E. Harriman at 6 (as amended at 17).

Although, as will be seen, a dispute exists as to Doherty's role as counsel, it is undisputed that he had responsibility for probating the Harriman will, filing documents appropriately and winding up the estate. Doherty Deposition at 34.

Plaintiff contends that Doherty represented, or appeared to represent, Canal in both its roles, i.e., as co-executor of the estate and as trustee of the Trust. Defendant insists that his duties were limited to counselling Canal as co-executor of the will. Regarding the statute of limitations issue, this dispute is not material.

On January 2, 1976, Doherty forwarded blank forms to Canal to permit preparation and filing of returns with the Tax Bureau.

Doherty maintains—and plaintiff fails to offer any evidence to the contrary—that Canal informed Doherty that it would be preparing the tax returns itself. Doherty Dep. at 53–54, 57, 75–76. In his January 2 letter, Doherty recommended that Canal file certain documents with the Tax Bureau in duplicate and enclosed several blank forms to assist Canal in the preparation and filing of the taxes for the David E. Harriman estate, including a release form ("L–28") for the beneficiaries to pay taxes on the future interests before the tax was due. Doherty also indicated that he would be available if Canal had any questions in filling out the appropriate forms. Plaintiff's Exhibit 3 at 1.

On January 6, 1976, Canal provided Doherty a copy of its *completed* Massachusetts Inheritance Tax Return.[3] It is undisputed that Canal prepared the tax return without Doherty's legal assistance. Canal computed the tax on the Harriman Estate as $51,253.61, and later paid an additional $2,499.86. Defendant's Exhibit F, Complaint Re: Key Trust Company of Maine v. Robert and Janet Carrol, as beneficiaries under the Trust ("Carrol Complaint") at ¶ 18. The total amount of inheritance taxes paid by Canal was therefore $53,753.47.

According to Canal, it understood that this figure represented full payment of inheritance taxes on both present and *future* interests. Plaintiff's Exhibit 5, Key Trust's Answer to Interrogatories at 5. As plaintiff found out some time later, however, this payment satisfied the tax on present interests only, and did not include payment of inheritance taxes on any future interests.

2. In distilling the undisputed facts, the court has been handicapped by plaintiff's fumbling attempt at compliance with Local Rule 56.1. This rule states that "material facts of record set forth in the [defendants'] statement will be deemed for the purposes of the motion to be admitted by [plaintiff] unless controverted by the statement required to be served by [the plaintiff]." This statement must include "a concise statement" of *disputed* facts "with page references to affidavits, depositions, and other documentation."

Here, the defendants' statement of material facts, comprising 46 numbered paragraphs with clear citations to the record, is opposed by plaintiff's seven pages of discursive text, not double spaced, and without specific citations to the record. While this approach generates a lot of dust, which may have been plaintiff's intent, it does not further the goal of sharply focusing areas of dispute.

Fortunately, the facts necessary for ruling on the defendants' statute of limitations argument are straightforward.

3. Although Canal had already filed the tax return with the Tax Bureau, the last sentence of the letter states, "[a]fter review, please let (Canal) have your comments." Plaintiff's Exhibit 8.

On April 25, 1977, plaintiff alleges that Doherty was furnished with the *completed* release forms of all of the beneficiaries of the future interests. Key Trust contends that Doherty acted negligently and committed legal malpractice by failing to file these forms with the appropriate persons. Key Trust maintains that it assumed that Doherty had filed the L–28 release forms with the Tax Bureau and that as a result the taxes on the future interests had been settled.

There are several problems with plaintiff's allegations regarding the release forms. First, at oral argument, plaintiff failed to present any evidence, other than counsel's bare allegations, supporting its claim that any beneficiary in fact signed a release form. The record contains no affidavits or depositions from any of the beneficiaries attesting to this point, despite their availability to counsel.

Second, there is an complete lack of evidence on the record that Doherty ever *received* completed release forms signed by all the Harriman beneficiaries, even assuming they were signed. The only evidence in this area is the affidavit of Ronald Robinson, a Vice–President of Canal, who states that completed forms were sent to Doherty to settle and close out the inheritance taxes on present and future interests. Affidavit of Ronald Robinson, Attached as Exhibit 1 to Plaintiff's Supplemental Memorandum of Law.

Although, as will be seen, the issue of whether Doherty ever received the release forms is irrelevant to the limitations question, it is worth noting that the Robinson affidavit contains drastic flaws. First, it is doubtful that Robinson, who only replaced the previous administrator of the Harriman estate (Frank Strout) on April 25, 1977, had personal knowledge of events. More seriously, the Robinson Affidavit contains inadmissible hearsay regarding the purported substance of conversations between another predecessor of Robinson's, John Hubbard, and the defendant Doherty concerning the L–28 release forms. *See* Fed. R.Civ.P. 56(e).

Beyond this, it is hard to credit plaintiff's assertion that in April of 1977 Key Trust furnished Doherty with completed L–28 forms from all the Harriman beneficiaries, when in a letter of November 24, 1978, Canal wrote to Mrs. Harriman, admitting that Doherty had requested the names and addresses of the beneficiaries but that Canal did not have this information. Plaintiff asks the court to believe that Canal knew something in 1977 that it concededly did not know in 1978.

Finally, on a more practical note, the copies of letters from Doherty to Canal and the Massachusetts Inheritance Tax Bureau that plaintiff relies on in support of its theory are of such poor quality that they are virtually illegible. *See* Plaintiff's Exhibits 11 and 14.

To continue with the chronology, on August 23, 1978, the Tax Bureau assessed an inheritance tax in the amount of $30,540.33 on the present value of the life estate and informed Doherty that Canal had overpaid the estate tax by $21,957.09. In its letter, the Bureau noted that the excess payment *would be held on account for future taxes.* Significantly, in its computation, the Tax Bureau crossed out "Final" next to the words "Amount Due–0." The 1978 Inheritance Tax Closing Letter also contained these interlineations.

Key Trust admits that on September 5, 1978, Doherty forwarded copies of the 1978 Inheritance Closing Letters to Canal and also filed these letters in Hampden Probate Court. Defendant's L.R. 56.1 at ¶ 18. How any competent bank officer could assume, given these documents, that the Harriman estate was not potentially liable for future taxes is a mystery plaintiff's submissions do not elucidate.

On August 10, 1978, Doherty sent Canal a bill for his services in the amount of $6,143.75. The letter stated that the charges were for "all legal services rendered in re probate of the Estate of David E. Harriman." Defendant's Exhibit I (Attached to Affidavit of Cynthia Smith). After Doherty sent his bill in 1978, he had no contact with Canal Bank or Key Trust until the filing of this lawsuit. Doherty Aff. at

¶ 3. However, several noteworthy events occurred in the interim.

First, in 1982, Canal National Bank went through a series of changes and was ultimately transformed into Key Bank Company of Southern Maine ("Key Bank") in 1984. In 1986, the trust facilities of Key Bank of Southern Maine were transferred to plaintiff, Key Trust Company of Southern Maine ("Key Trust").[4] Due to the various transfers and inter-office turmoil, Key Trust misplaced the Harriman file from 1984 until some unspecified later date. From Key Trust's letter to the Tax Bureau requesting that the penalty be waived on the Harriman estate, it appears that the Harriman file resurfaced no earlier than in 1990.

Second, the tenant of the life estate, Helen Harriman, died on May 7, 1984, while domiciled in Connecticut. Defendant's Exhibit F, Carrol Complaint at ¶ 31. Between 1985 and 1986, Key Trust, with no file but apparently assuming that the inheritance taxes were paid on the future interests, distributed the entire residual trust to the beneficiaries.

Third, sometime in 1983, the Tax Bureau commenced a special project to close out old inheritance cases. Affidavit of Jerry Simpkins at ¶ 7. In 1986, in pursuit of this effort, Simpkins, a tax auditor with the Bureau, sent out a form letter inquiring into the status of the Harriman trust. The letter opened by stating "[i]t appears from an examination of our files that the tax on the remainder interest of the above-captioned estate has not yet been assessed." *Id.* at ¶ 8. The letter then posed six questions, including whether the trust had terminated or was still active and whether any life tenant had died. *Id.* The letter was sent to Key Trust, with a request for an immediate response to the questions.

Plaintiff vigorously contests the existence of the Simpkins letter. Concededly, the Tax Bureau no longer has a copy of the letter or, indeed, any information regarding the Harriman Estate. However, although

Simpkins cannot specifically remember when the letter of notice was sent to Key Trust, he is "positive that Key Trust received a letter of this type prior to June 6, 1986...." Simpkins Aff. at 11. His certainty derives from the fact that he received a letter *from* Key Trust regarding the Harriman Trust on that date. This letter, in its entirety, states:

> In reference to your letter regarding the David E. Harriman Trust, the Trust ceased to be a Massachusetts Trust on June 30, 1982. Mrs. Helen C. Harriman, the surviving spouse and sole income beneficiary, moved to Connecticut in 1982. A final Massachusetts return for this trust was filed, covering the period January 1, 1982 through June 30, 1982. At no time has there been Massachusetts real estate or Massachusetts source income.

Defendant's Exhibit G, Letter of Key Trust Company's Assistant Vice–President and Trust Officer, Carolyn B. May (emphasis added).

Simpkins states that this letter from Key Trust has to be in response to the form letter sent out, because Simpkins mailed no other letter to Key Trust during this period of time. Simpkins Aff. at ¶ 11. Plaintiff is thus left in the ticklish position of denying the existence of a letter it admittedly responded to.

For purposes of Rule 56, the record shows that before June 6, 1986 Key Trust received a letter from Massachusetts tax authorities which should reasonably have put it on notice that a tax on the Harriman Trust remainder interests was owed.

Apparently, Key Trust was incorrect in assuming that no inheritance tax was due in Massachusetts because the life tenant moved to Connecticut. On August 11, 1987, the Bureau had a telephone conversation with representatives from Key Trust. A handwritten note in the Tax Bureau's files states "Phoned-explained situation." Defendant's Exhibit H.

---

**4.** In order to avoid confusion over the various entities, for purposes of this discussion, all references will be to "Key Trust" only.

In February, 1989, the Tax Bureau sent Key Trust another form letter. Scott Winslow of Key Trust responded on May 3, 1989, and informed the Bureau that Helen Harriman, the life tenant, had died on May 7, 1984.

After evaluating all of the information given by Key Trust, the Bureau assessed a tax on Key Trust, as trustee of the Inter–Vivos Trust, in the amount of $57,454.57 (after deducting the $21,000 held on account since 1978) plus interest in the amount of $47,927.43.

In an attempt to recoup some of its losses, plaintiff filed actions against several of the Trust beneficiaries, and now has filed this malpractice claim against the defendants, seeking damages in the amount of $115,623.88, plus interest, costs and reasonable attorney's fees.

## III. DISCUSSION.

### A. Summary Judgment Standard.

■ As noted, in addressing a motion for summary judgment the court must view the facts, and all reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party. *J.I. Corp. v. Federal Ins. Co.*, 920 F.2d 118, 118 (1st Cir.1990). The basic inquiry in a summary judgment motion is whether "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

■ The burden on the moving party may be discharged by a showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). As noted by the *Celotex* court, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Id.* at 323–24, 106 S.Ct. at 2553. With this standard in mind, the court will address defendants' motion for summary judgment.

### B. Statute of Limitations.

Defendants offer four strong arguments in support of their motion for summary judgment. First, they are entitled to summary judgment because there is no evidence that there was an attorney-client relationship between Key Trust and Paul Doherty. Second, even if there was an attorney-client relationship, finalizing inheritance tax matters was not within the scope of Doherty's retention by Canal, as executor of the estate. Third, given the misplaced file, any alleged negligence of Paul Doherty was not the proximate cause of the plaintiff's losses. And fourth, Key Trust's claims are barred by the statute of limitations. Because defendants' limitations defense is so clearly dispositive, the court need not address the defendants' alternative theories.

■ In Massachusetts, the applicable time period for a claim of attorney malpractice is three years. Mass.Gen.Laws ch. 260, § 4. A cause of action, however, does not accrue until a plaintiff "knew or reasonably should know that it has sustained appreciable harm as a result of defendant's negligence." *Cantu v. St. Paul Cos.*, 401 Mass. 53, 57, 514 N.E.2d 666 (1987) (citing *Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268, 475 N.E.2d 390 (1985)). The First Circuit recently noted that:

[a] cause of action for an inherently unknowable wrong does not accrue under the Massachusetts discovery rule until the facts which gave rise to the cause of action, as distinguished from the legal theory, either become known or should have become known to the injured party in the exercise of reasonable diligence.

*Edwards v. John Hancock Mutual Life Ins. Co.*, 973 F.2d 1027, 1029 (1st Cir.1992) (citations omitted). A cause of action accrues on discovery of "appreciable harm" even if the extent of harm is not fully known. *Id.* at 56, 514 N.E.2d 666 (citing *Olsen v. Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 175, 445 N.E.2d 609 (1983)). *See also Riley v. Presnell*, 409 Mass. 239, 243, 565 N.E.2d 780 (1991); *Salin v. Shal-*

*gian,* 18 Mass.App.Ct. 467, 470, 467 N.E.2d 475 (1984).

The Supreme Judicial Court recently addressed the issue of accrual of the statute of limitations in a legal malpractice claim in *Murphy v. Smith,* 411 Mass. 133, 579 N.E.2d 165 (1991). In that case, the plaintiffs sued their attorney for negligently certifying good record title to a parcel of land. *Id.* at 134, 579 N.E.2d 165. The S.J.C. held that the plaintiffs knew or should have known of the alleged malpractice when they were given a letter by their neighbor's attorney asserting a legal right to the property. *Id.* at 136, 579 N.E.2d 165.

The defendants offer two theories in support of their statute of limitations argument. First, defendants claim that the statute of limitations began to run in 1978, when Canal received the Inheritance Tax Closing Letter informing it that it had overpaid the taxes and that $21,000 was being held on account for future taxes. As of this date, Key Trust's predecessor knew or should have known that Doherty had not settled the tax on the future interests of the Harriman estate.

Alternatively, defendants contend that the statute of limitations began to accrue, at the very latest, in June of 1986, when Jerry Simpkins sent out the form letter to Key Trust informing it that inheritance taxes had yet to be assessed on the future interests. Since the plaintiff did not file suit until April 25, 1991, beyond the three-year time period provided for in Mass.Gen. Laws ch. 260, § 4, defendants argue that they are entitled to judgment as a matter of law.

In opposition, plaintiff argues that it did not suffer "appreciable harm" until February of 1989, when the Tax Bureau formally requested tax information directly from Key Trust. After this inquiry, Key Trust prepared and filed an inventory of assets of the Harriman Marital Trust. Until this time, Key Trust asserts, it had no reason to know that an inheritance tax was due on the future interests.

Accepting the doubtful proposition that Doherty did receive completed L–28 forms and acted negligently in failing to pay the taxes on the future interests, the statute of limitations began to run, at the latest, in June of 1986 when Key Trust received the Tax Bureau's letter stating that inheritance taxes were due on the Harriman estate.

As noted, while it is true that the defendants do not have a copy of the exact letter, they have produced solid, and unrebutted, evidence supporting their claim that Key Trust in fact received it. Defendants have supplied the court with the affidavit of Jerry Simpkins, the tax auditor in charge of clearing out the old estates, attesting to the fact that Key Trust was sent a form letter notifying it that taxes on future interests were due. Second, defendants have offered the June 6, 1986 letter from Key Trust's Vice–President and Trust Officer Carolyn Mays, who responds "[i]n reference to your letter regarding the David E. Harriman Trust...." In her affidavit, Ms. Mays admits that although she cannot remember the specific date when she received an inquiry from the Tax Bureau, she is certain that Key Trust received a letter from the Tax Bureau regarding the Harriman Estate. Simpkins has sworn that the form letter is the only letter that he sent out during that period of time, and therefore the only letter that Key Trust could be responding to. In sum, and at the risk of repetition, the undisputed record shows that the letter was sent, received and responded to. Any other inference is pure speculation.

Key Trust cannot create a material issue of fact by simply hypothecating some other letter that, contrary to Simpkins' sworn statement, it might have been responding to. More is required of the non-moving party at this stage in the proceedings. Of course, the burden is upon the moving party "to put the ball in play, averring an absence of evidence to support the non-moving party's case." *Garside v. Osco Drug,* 976 F.2d 77, 77 (1st Cir.1992) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554)). But, "[t]he burden then shifts to the nonmovant, to establish the existence of at least one fact

issue which is both genuine and material." *Id.* (citations omitted). At this stage, in other words, Key Trust must point to cognizable evidence generating questions of fact which "need to be resolved before the related legal issues can be decided." *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). Plaintiff has failed to do this.

Finally, plaintiff's argument that the statute of limitations did not begin to run until the plaintiff actually suffered harm as a result of the alleged malpractice is without merit. Notice of the "harm" occurs when the plaintiff has knowledge of its exposure to liability, not when it must actually write the check. Plaintiff's officers should have known in 1978 of the tax liability or, at the latest, in June 1986. Massachusetts law provides that "a cause of action accrues when a reasonable person, in the exercise of due diligence, 'would have discovered the damage.'" *Edwards v. John Hancock Mut. Ins. Co.*, 973 F.2d at 1029–30 (quoting *Riley v. Presnell*, 409 Mass. at 245, 565 N.E.2d 780) and citing with approval *Malapanis v. Shirazi*, 21 Mass.App.Ct. 378, 383, 487 N.E.2d 533 (1986) ("limitations period begins when reasonably prudent person 'reacting to any suspicious circumstances of which he might have been aware ... *should have discovered* that he had been harmed.'") (emphasis added)). In this case, plaintiff should have discovered the potential harm upon receipt of the 1986 letter. Following this, Key Trust had three full years to investigate the possibility of attorney malpractice, but instead slept on its rights.

## IV. CONCLUSION.

For the reasons stated above, the defendants' Motion for Summary Judgment is hereby ALLOWED.