Kern, J.
INTRODUCTION
The pro se plaintiff, Costas Marnerakis (“Marnerakis”) brought this action for legal malpractice against the defendants, Harold Lichten (“Lichten”) and the partners/principals of the law firm of Angoff, Goldman, Manning, Pyle, Wanger, and Hiatt, P.C. (“Angoff j (collectively “the defendants”), based on their alleged negligent representation of him in an employment discrimination lawsuit.[2] Specifically, Marknerakis alleges the defendants failed to timely file charges with the Massachusetts Commission Against Discrimination (“MCAD”) with regard to his claims for age discrimination and retaliatory discharge. The defendants now move for summary judgment on the ground that Marnerakis failed to file his Complaint *290 within the applicable three-year statute of limitations, pursuant to G.L.c. 260, §4.
For the reasons stated below, the defendants’ motion is ALLOWED.
BACKGROUND
The following facts are taken as undisputed and in the light most favorable to Marnerakis, the non-moving parly.
On or about October 5, 1992, Marnerakis filed a complaint with the MCAD based on his disability as an amputee, against his employers, Raytheon Company and Raytheon Service Company (“Raytheon”). A few years later, in January 1995, after perceiving additional discrimination, Marnerakis met with Lichten, an attorney for Angoff, and retained the defendants to represent him in an employment discrimination lawsuit against Raytheon. The parties signed a contract, outlining legal fees and terms of representation.
Lichten and Ilyse Levine (“Levine”), an associate attorney at Angoff, filed a complaint on Marnerakis’s behalf on February 2, 1995, alleging handicap discrimination. In July 1995, the defendants filed an amended complaint on Marnerakis’s behalf, adding additional claims for age discrimination and retaliatory discharge. The defendants filed neither a new complaint nor an amended complaint with the MCAD to include the two new charges.
In November 1995, Marnerakis informed the defendants that he wished to terminate his attorney-client relationship. On or about December 6, 1995, the defendants filed a motion to withdraw with this court. In support of that motion, Marnerakis sent two letters to Edward Sullivan (“Sullivan”), the Clerk of the Courts, requesting approval of the defendants’ motion. This court denied the motion on December 19, 1995. The defendants subsequently filed a motion for reconsideration. Additionally, Marnerakis sent a third letter to Sullivan, dated December 28, 1995, urging the new motion be granted. He wrote, in pertinent part:
The Law firm of Angoff/Goldman violated their agreement with the Plaintiff and instead of Senior Legal representation, they provided him with Junior/Unsupervised substandard Legal representation.
Lichten passed my case on to a Junior attorney who appeared to be receiving their “on the job” training, without any assistance or guidance and at the expense of my case.
Therefore the Plaintiff requested the withdrawal of his attorneys based on the fact that his attorneys had already abandoned his case, and for quite some time they had not acted on his best interests. In summary: It became obvious to the Plaintiff by early December that his attorneys were following a course, by design or because of negligence, that was clearly intended to lead the Defendants to Court with [a] complete Discovery while their own client was being led to the deadline of the Discovery with very little and incomplete Discovery.
On February 8, 1996, Attorney Paul Merry (“Merry”) filed an appearance on behalf of Marnerakis. Consequently, on February 13, 1996, this court granted defendants’ motion to withdraw as Marnerakis’s counsel.
On November 12, 1996, Raytheon filed a Motion for Summary Judgment in Marnerakis’s employment discrimination suit, seeking to dismiss Marnerakis’s age discrimination and retaliatory discharge claims because he failed to exhaust his administrative remedies by not filing timely charges with the MCAD. Marnerakis’s new counsel, Seth Salinger, filed an opposition to Raytheon’s motion on October 7, 1997.[3] A portion of Marnerakis’s defense in his opposition to Raytheon’s summary judgment involved the defense of Lichten’s non-reporting to MCAD. On November 18, 1998, this court granted Raytheon’s Motion for Summary Judgment in part. Consequently, Marnerakis’s age discrimination and retaliation claims were dismissed.
Marnerakis states that he called the defendants in early 1996 and spoke to Levine regarding the balance on his legal bill. She told him to forget about it. After Merry lost a Motion to Compel on behalf of Marnerakis in December 1996, Marnerakis called the defendants again in January 1997 and spoke to Levine. She suggested to Marnerakis that he ask Merry to file a Motion for Reconsideration. Marnerakis also asked Levine and the defendants to resume his representation, but she stated they could not.[4]
Shortly after this court’s decision regarding summary judgment in November 1998, Marnerakis again called the defendants to inform them of the adverse decision he received because of Lichten’s filing omission. Lichten purportedly stated, “There are things you can do about it. Let me look into it, and I will get back to you.” Marnerakis never heard back from him. At this time, Marnerakis’s attorney, John Swomley (“Swomley”) suggested that he sue Lichten for malpractice.[5]
In mid-2000, another attorney, who was considering representing Marnerakis, called the defendants to inform them that they should notify their malpractice insurer.[6] Lichten allegedly told the attorney that “there were things that could be done,” without going into specifics.
Marnerakis filed this suit on November 20, 2001. His Complaint alleges the defendants’ negligence and violations of the Massachusetts Rules of Professional Conduct caused the dismissal of his age discrimination and retaliatory discharge claims based on the *291 defendants’ failure to file charges with the MCAD or to amend his original complaint with the agency to include those additional claims.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving party bears the burden of demonstrating affirmatively both the absence of triable issues and its entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who would not bear the burden of proof at trial may demonstrate the absence of triable issues by either submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To overcome a summary judgment motion, the non-moving party must articulate specific facts establishing the existence of general issues of material facts. Pederson, supra, at 17. Mere assertions of the existence of disputed facts without evidentiary support cannot defeat a summary judgment motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
II. Statute of Limitations
The defendants move for summary judgment on the grounds that Mamerakis’s claims for legal malpractice are time-barred, pursuant to G.L.c. 260, §4. In particular, the defendants assert that Mamerakis knew or should have known of the defendants’ alleged negligence as early as December 1995, when he wrote to this court regarding his desire to discharge the defendants and retain new counsel because of their purported wrongdoing. Alternatively, the defendants argue Mamerakis knew or should have known of the alleged malpractice, at the latest, by October 1997, when new counsel filed an opposition to Raytheon’s Motion for Summary Judgment, in which he had to address claims that Mamerakis failed to timely file his age discrimination and retaliatoiy discharge claims with the MCAD. Moreover, Mamerakis incurred damages, or “appreciable harm,” in the form of attorneys fees required to defend against these omissions, allegedly caused by the defendants’ malpractice. Mamerakis filed his Complaint in this case on November 20, 2001, three years after this court allowed Raytheon’s Motion for Summary Judgment. The defendants argue the three-year statute of limitations had already expired.
In response, Mamerakis asserts he only learned of the defendants’ malpractice and ethics violations on or after November 18, 1998, upon receiving notice that Raytheon’s Motion for Summary Judgment had been allowed in part.[7] Prior to that point in time, Mamerakis asserts none of the three subsequent attorneys he hired ever mentioned the defendants’ acts of malpractice to him, and if their expert legal minds were not aware of the malpractice, he as a layman could not possibly have recognized the malpractice. Alternatively, he argues the “continuing representation” doctrine tolls the statute of limitations because he received additional legal advice from the defendants in 1996, 1997, 1998 and 2000.
Finally, Mamerakis claims the defendants violated G.L.c. 260, §12, fraudulent concealment, and 18 U.S.C. §1961 et seq., the Racketeer Influenced and Corrupt Organizations (RICO) Act and these statutes toll the statute of limitations.
No doubt, Mamerakis feels aggrieved by his interactions with the defendants and the legal system. In his Opposition, he frequently refers to a conspiracy by the defendants and to the corruption that destroyed his discrimination case. He also expresses his disdain for the defendants’ underhanded and dishonest legal representation. While this court may be sympathetic to Marnerakis’s feelings, it must nonetheless resolve disputes according to the law. It is desirable that all parties who come before this court leave feeling that justice has been done; however, one party may be disappointed with this court’s duty to do justice within the boundaries of the law.
A claim for legal malpractice must be brought within three years of when the cause of action accmes. G.L.c. 260, §4.[8] If a defendant asserts the statute of limitations and demonstrates the plaintiff commenced the action more than three years after the date of his/her injuiy, the plaintiff must prove facts exist to take the case outside the statute of limitations or to toll the statute of limitations. Williams v. Ely, 423 Mass. 467, 474 (1996) (outlining plaintiffs burden); Lyons v. Nutt, 436 Mass. 244, 249 (2002) (noting continuing representation doctrine tolls statute of limitations). Thus, to determine when Mamerakis’s cause of action accrued, this court first examines the nature of the claim and the timing of the relevant events, based on the documents before the judge on the summary judgment motion.
In legal malpractice cases, the three-year statute commences when a client “knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer’s conduct.” Lyons, 436 Mass, at 248 (referring to this principle as the discovery rule), quoting Williams, 423 Mass, at 473. Thus, an action accmes even if a client did not know that his lawyer was negligent. Id. at 249. See also, Cantu v. St Paul Cos., 401 Mass. 53, 57 (1987) (finding legal malpractice action accmed when doctor learned his attorneys failed to notify his excess insurance carrier of a potential claim, not when he replaced his attorneys and hired different ones). The defendants assert that Mamerakis knew or should have known that he *292 suffered harm as early as November 1995, when he informed the defendants he was terminating their relationship because of their negligence, but no later than October 1997, when he filed his opposition to Raytheon’s Motion for Summary Judgment. Marnerakis contends, however, that he did not know about the defendants’ malpractice until November 1998, after he received an adverse decision on Raytheon’s motion.
A. Accrual of the Cause of Action
In the context of this case, the statutory clock began to run when Marnerakis learned or should reasonably have learned that the defendants failed to file the requisite charges with the MCAD. Thus, the question is whether Marnerakis knew or reasonably should have known he had been harmed by the defendants’ omission before November 20, 1998. Based on the evidence presented, as to actual knowledge, Marnerakis first had notice in the fall of 1996, when he received Raytheon’s Motion for Summary Judgment. Thus, Marnerakis failed to commence this action within three years from the date on which he learned of the defendants’ harm to him.
Marnerakis’s argument that he was not harmed until he received the adverse summary judgment decision fails because knowledge of the full extent of his damages is not necessary for accrual of an action. Pelletier v. Chouinard, 27 Mass.App.Ct. 92, 95 (1989) (noting, however, that actual damages is an element of legal malpractice claim), citing Olsen v. Bell Tel. Lobs, Inc., 388 Mass. 171, 175 (1983). See also, Cantu, 401 Mass, at 57 (rejecting plaintiffs argument that extent of harm unknown until after appeal concluded). Marnerakis suffered harm before he lost his age discrimination and retaliatory discharge claims at the summary judgment stage. He was forced to expend additional attorneys fees and expenses in an attempt to mitigate the harm caused by Lichten’s error. Pelletier, 27 Mass.App.Ct. at 95 (finding attorneys fees constitute appreciable harm); Cantu, 401 Mass, at 57 (same). See also, Massachusetts Electric Co. v. Fletcher, Tilton & Whipple, P.C., 394 Mass. 265 (1985) (holding legal expenses incurred in defending claims based on negligent conduct of attorneys constitutes harm). Marnerakis knew the defendants failed to timely file his charges with the MCAD as soon as Raytheon moved for summary judgment. Furthermore, he paid attorney fees and expenses to challenge Raytheon’s summary judgment claims asserted after the company discovered Lichten’s filing error. Consequently, at the latest, Mamerakis’s claim accrued in October 1997, when his counsel filed an opposition to Raytheon’s Motion for Summary Judgment.
B. Continuing Representation Doctrine
In an attempt to save his claims, Marnerakis asserts the continuing representation doctrine, which “recognizes that a person seeking professional assistance has a right to repose confidence in the professional’s ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.” Cantu, 401 Mass, at 58, quoting Greene v. Greene, 56 N.Y.2d 86, 94 (1982). See also, Murphy v. Smith, 411 Mass. 133, 137 (1991) (describing applicability of continuing representation doctrine “where the attorney in question continues to represent the plaintiffs interests in the matter in question”). In the present case, Marnerakis submitted an affidavit that stated he received legal advice from the defendants in 1996, 1997, 1998 and 2000.[9] This court disagrees.
Generally, an attorney owes a duty of care only to clients. Williams, 423 Mass, at 475 (internal citations omitted). An attorney-client relationship may be established based on an express contract between the parties or may be implied based on the parties’ conduct. Miller v. Mooney, 431 Mass. 57, 61 (2000). See also, Williams, 423 Mass, at 475 (finding attorney-client relationship existed because firm filed disclaimers on behalf of plaintiffs, billed them for the services and advised them via another client of the effect of a new decision from the United States Supreme Court). Additionally, an attorney may owe a duty to individuals, who are not clients, if the attorney can infer reliance on the advice rendered. Id. at 475-76. In this case, Marnerakis and the defendants entered into an attorney-client relationship in January 1995 when they signed an express contract. Marnerakis, however, severed the relationship about a year later on the grounds that the firm was negligently handling his case. Thus, Marnerakis’s argument may only be supported by sufficient evidence that the defendants’ conduct implied an attorney-client relationship or that he relied on advice the defendants rendered after he severed the relationship.
Marnerakis relies on four incidents of contact with the defendants:
1. In early 1996, Marnerakis called the defendants and spoke to Levine about the balance he owed on his legal bill; however, he provides no facts or evidence that she gave him any legal advice.
2. In 1997, Marnerakis again called the defendants. He asserts Levine suggested he file a motion for reconsideration after Marnerakis told her that Merry lost a motion on his behalf. He presents no evidence, however, that he considered the defendants to be his attorneys again. In fact, Marnerakis was represented by independent legal counsel. Furthermore, he asked Levine to resume representation of his discrimination case, but she declined to do so.
3. In late 1998, Marnerakis called the defendants after learning of the adverse summary judgment decision based on the defendants’ failure to file the appropriate paperwork with the MCAD. In response, Lichten purportedly stated that he would look into it and get back to him. This is not a situation where the plaintiff was not represented by legal counsel and the attorney *293 assured the former client that he would handle the problem. See Murphy, 411 Mass, at 137 (reversing summary judgment in favor of defendant attorney where plaintiff considered attorney was representing him based on attorney’s assurance that a letter questioning valid title “did not present a cause for concern and that he would take care of it”). Here, Marnerakis had other legal representation. Furthermore, Lichten never said that he would take of it, only that he would look into it.
4. Marnerakis relies on Lichten’s statement to a prospective attorney in mid-2000 that “things could be done.” Again, this statement is inapposite to that relied on by the plaintiff in Murphy because Lichten did not offer to do anything for Marnerakis, nor did he offer legal advice. Murphy, 411 Mass, at 137.
The continuing violation doctrine is inapplicable if a client “actually knows that he suffered appreciable harm as aresult of his attorney’s conduct.” Lyons, 436 Mass, at 250, quoting Cantu, 401 Mass, at 58 (noting doctrine seeks to protect “innocent reliance,” which fails to exist if client knows of actual harm). In this case, Marnerakis originally terminated his relationship with the defendants based on their alleged wrongdoing and negligent handling of his case. Subsequently, in November 1996, Marnerakis received Raytheon’s Motion for Summary Judgment which sought to dismiss his age discrimination and retaliatory discharge claims based on his failure to comply with the MCAD filing requirement. Consequently, no evidence exists that the defendants undertook to represent Marnerakis after he severed his relationship with them. Mamerakis’s continuing representation theory fails.
C. Applicability of Fraudulent Concealment and RICO Act
Marnerakis further argues that the statute of limitations is tolled because the defendants fraudulently concealed their malpractice and/or because they engaged in racketeering. These contentions are also without merit. Marnerakis failed to raise these claims in his Complaint and he did not amend his Complaint to include them. While he presently asks for leave to amend to include these additional claims, this court declines to allow him to do so because G.L.c. 260, § 12 and 18 U.S.C. §1961 et seq. fail to provide Marnerakis with relief and fail to toll the statute of limitations, therefore, such an amendment would be futile.
The plaintiff in Levin v. Berley, 728 F.2d 551 (1984), similarly argued that an attorney’s assurances that his tax controversy would be resolved favorably constituted fraudulent concealment and thus tolled the statute of limitations. Id. at 555. The Court disagreed, holding that any assurances failed to constitute concealment within the statute because the plaintiff knew of the cause of action before he contacted the attorney. Id. The Court also noted that no evidence existed that the assurances “lulled [the plaintiff] nor, is there any reason they should have done so, the fact of a mistake being capable of verification though independent legal advice.” Id. Finally, the court found that the attorney was not in a fiduciary relationship with the plaintiff at the time he made the assurances and was a prospective defendant. Id. See also, Burbridge v. Board of Assessors of Lexington, 11 Mass.App.Ct. 546 (1981) (in absence of fiduciary relationship, mere silence as to existence of cause of action is not fraudulent concealment that would prevent party from asserting statute of limitations; there must be some affirmative act of concealment with an intent to deceive).
In this case, Marnerakis argues that the defendants concealed their negligence in three ways; first, by suggesting to him in 1997 that he file a motion for reconsideration; second, by telling him in late 1998, in response to Mamerakis’s call regarding the adverse summary judgment decision, that he would look into it and get back to him; and, finally, by stating to a prospective attorney that things could be done. Marnerakis presents no evidence, however, that he and the defendants continued to have an attorney-client relationship. On all of these occasions, Marnerakis was represented by independent counsel, and the defendants declined Marnerakis’s request to resume representation on his case. Thus, the defendants no longer had a fiduciary duly to Marnerakis.
Moreover, none of these statements constitutes concealment within the statute. When Marnerakis contacted the defendants in 1997, he did so regarding his dissatisfaction with Merry’s legal services. Marnerakis presents no evidence that Levine’s suggestion to have Merry file a motion for reconsideration was an affirmative act to conceal any alleged malpractice, nor did he present any evidence of deceptive intent. The last two statements by the defendants took place after Marnerakis knew of the cause of action for malpractice and was represented by independent legal counsel. Consequently, G.L.c. 260, §12 fails to toll the statute of limitations.
Finally, Marnerakis’s assertion that the RICO Act tolls the statute of limitations lacks evidentiary and legal support. Marnerakis failed to plead facts in his Complaint, and presently submits no facts, evidence or supporting case law to bring the defendants’ allegedly wrongful acts, i.e., their failure to file charges with the MCAD, within the prohibitions of the RICO Act. 18 U.S.C. §1962. In his Opposition to Defendants’ Motion, Marnerakis continually refers to the racketeering of Raytheon. Raytheon is not a parly to this suit and any actions it took are irrelevant. Marnerakis also alleges he has valid claims against Lichten under the civil remedies portion of the RICO Act, 18 U.S.C. §1964, based on Lichten’s purported threats of defamation, which impacted his ability to secure legal representation, and the infliction of severe duress. Again, Marnerakis presents no facts, evidence or case law in support of this contention, which is his burden *294 at the summary judgment stage. Marnerakis may not rest on mere assertions of the existence of disputed facts without evidentiary support to defeat a motion for summary judgment. LaLonde, 405 Mass, at 209. Thus, Marnerakis’s reliance on the RICO Act fails, and the three-year statute of limitations bars Marnerakis’s malpractice claim against the defendants.
ORDER
For the foregoing reasons, the defendants’ Motion for Summary Judgment is ALLOWED.

Costas Marnerakis v. Raytheon Co. et al (Civil Action No. 95-00656).

Mamerakis brought Salinger into the case on March 17, 1997. Additionally, he retained John Swomley on or about October 8, 1997 to assist Salinger. Salinger filed a motion to withdraw on October 16, 1997, which was allowed.

Mamerakis sent Levine a memorandum on February 23, 1997 thanking her for her suggestion and letting her know that the court granted the Motion for Reconsideration.

It is unclear from the evidence presented whether Swomley made the suggestion to sue the defendants before or after Marnerakis made his phone call to Lichten.

In his affidavit in support of his Opposition to Summary Judgment, Marnerakis referred to this attorney only by his last name, Stern.

“A violation of a canon of ethics or a disciplinary rule is not itself an actionable breach of duly to a client. As with statutes and regulations, however, if a plaintiff can demonstrate that a disciplinary rule was intended to protect one in his position, a violation of that rule may be some evidence of the attorney’s negligence.” Fishman v. Brooks, 396 Mass. 643, 649 (1986) (internal citations omitted).

Section 4 provides, in pertinent part, “(a)ctions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues.” G.L.c. 260, §4.

Mamerakis states at various points in his opposition that he relies on these four contacts: however, at other points he refers to just those that took place in 1998 and 2000. In either case, none of them satisfies the continuing violations doctrine.