NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-793

TANESHA SANDERSON

vs.

ARTHUR ZACK & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Tanesha Sanderson, appeals from the entry of summary judgment dismissing her claim for legal malpractice for failure to file a complaint within the statute of limitations. She argues that summary judgment should not have entered because the complaint was timely filed where the accrual date was tolled under the continuing representation doctrine.  We affirm.

Background.  We summarize the relevant facts, viewing "the evidence in the light most favorable to the party against whom summary judgment was entered" (citation omitted).  Williams v. Board of Appeals of Norwell, 490 Mass. 684, 685 (2022).  The plaintiff worked as a registered nurse at New England Baptist

---

[1] Feinberg, Campbell & Zack, P.C.

Hospital in the intensive care unit. On June 30, 2013, she suffered a work-related injury to her lower back. In January 2014, she retained the defendant, Attorney Arthur Zack, a partner at the codefendant law firm, Feinberg, Campbell & Zack, P.C., (collectively "defendants"), for purposes of bringing a workers' compensation claim.

By November 2016, the plaintiff had exhausted her workers' compensation benefits under G. L. c. 152, § 34 and "[s]he was receiving less money in section 35 benefits as a result of that." See G. L. c. 152, § 35. On or about November 30, 2016, New England Baptist Hospital's workers' compensation insurer filed a complaint for modification, discontinuance, or recoupment of compensation, which sought to terminate the plaintiff's weekly compensation benefits. The complaint for modification cited the independent medical examiner report of Dr. Janet Limke, which concludes, in part, that in her medical opinion the plaintiff "has a work capacity in the light-medium ranges of no lifting more than 30 pounds and occasional bending, stooping, and twisting."

In November or December of 2016, Attorney Zack advised the plaintiff that "[i]t's time to settle your case. I'm about to retire and it's time to make some money off of you off of this case and be done with it." The plaintiff questioned the timing

2

of the settlement, and Attorney Zack explained to her that she had exhausted "what [she] was getting," and that her choices were "either [lump sum settling] or you don't get anything at all." The plaintiff "was very uncomfortable" with Attorney Zack's explanation. Attorney Zack then explained that he was "gonna type up the forms," prompting the plaintiff to ask, "Well what is the settlement?" After Attorney Zack informed her of the amount, she "was like in disbelief."

Attorney Zack provided forms to the plaintiff to sign including an "Affidavit of Employee," which was needed for the Division of Industrial Accidents (DIA) judge to approve the lumps sum settlement. In March of 2022, the plaintiff stated that the affidavit was presented to her "in March 2017 for signature without explanation of the contents." She further stated that "[t]he affidavit was accurate based on the information provided to the [p]laintiff at the time she signed."[2] In October 2022, the plaintiff testified at her deposition that she did not sign the affidavit, but rather signed multiple "blank documents" that were placed in front of her, including the Affidavit of Employee referenced above. The Affidavit of Employee states, inter alia, that the plaintiff "would like to

_____

[2] The plaintiff's March 2022 statements are contained in her supplemental answers to one of the defendants' first set of interrogatories.

3

settle my case at this time, and thus I respectfully request that the administrative judge approve my settlement." The plaintiff testified that the contents of her affidavit were inaccurate. She also claimed that the portions of the Affidavit of Employment that stated, "Based on the foregoing, I respectfully request and urge the [DIA] to approve the settlement," and that she was "fully satisfied with the amount of the lump sum settlement" were incorrect as she "did not request . . . the approval of the settlement" and she "wasn't fully satisfied" with the lump sum settlement at the time.

On March 7, 2017, the plaintiff's case "was resolved by lump sum settlement agreement." After that settlement, the plaintiff "has never sought employment, either directly or through an agency, including sedentary work."[3] In addition, no doctor has advised the plaintiff that she is "permanently and completely disabled from work in any capacity at all."[4]

---

[3] Between December 2014 and December 2017, the plaintiff made approximately eighteen trips to international destinations in Europe and various Caribbean islands. The defendants argued that this evidence, combined with other evidence, demonstrated the plaintiff's ability to sit and perform sedentary work. Where we decide this case on the failure to comply with the statute of limitations, we need not address this argument.

[4] In her response to the statement of undisputed material facts in support of the defendants' motion for summary judgment, the plaintiff denied that "no doctor had ever told [her] that she was permanently and completely disabled from any work in any capacity at all." This denial is not supported by the summary

4

On July 27, 2021, the plaintiff filed a complaint in the Superior Court alleging legal malpractice.  The defendants moved for summary judgment and on May 5, 2025, a Superior Court judge allowed the motion because the plaintiff filed her complaint outside of the three-year statute of limitations for legal malpractice claims.  Judgment entered for the defendants and this appeal ensued.

Discussion.  The plaintiff contends that the judge erred in allowing the motion for summary judgment because her complaint was timely filed under the continuing representation doctrine.  For the reasons discussed below, the argument is unavailing.

"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted).  Dorchester Mut. Ins. Co. v. Miville, 491

judgment record.  Asked at her deposition whether any doctor had ever told her that she is "permanently and completely disabled from work in any capacity at all," the plaintiff responded, "I don't know" and "I can't think of one."  A party cannot attempt to create a disputed issue of material fact in this manner. See, e.g., Adams v. Schneider Elec. USA, 492 Mass. 271, 287 (2023) (at summary judgment nonmoving party bears burden to produce evidence sufficient to create genuine dispute of material fact).  See also Bensen v. Massachusetts Gen. Hosp., 49 Mass. App. Ct. 530, 532 n.3 (2000) (lack of memory amounts to statement made on "information and belief insufficient to defeat a well-pleaded summary judgment motion").

Mass. 489, 492 (2023). "We review decisions allowing summary judgment de novo" (citation omitted). Id.

The three-year statute of limitations applicable to a legal malpractice claim, G. L. c. 260, § 4, begins to run when a client "knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer's conduct." Williams v. Ely, 423 Mass. 467, 473 (1996). Here, the judge determined that the statute of limitations began to run when the plaintiff received the lump sum settlement proceeds in March or April of 2017, and thus the plaintiff was obligated to file her action by March or April 2020. The plaintiff argues, however, that the statute of limitations was tolled under the continuing representation doctrine. That doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." Murphy v. Smith, 411 Mass. 133, 137 (1991), quoting Cantu v. St. Paul Cos., 401 Mass. 53, 58 (1987). The doctrine has no application, however, where the client "actually knows that he suffered appreciable harm as a result of his attorney's conduct." Lyons v. Nutt, 436 Mass. 244, 250 (2002). If the client has such knowledge, then there is no "innocent reliance

6

which the continued representation doctrine seeks to protect." Cantu, supra.

Applying these principles, de novo, we reach the same conclusion as the judge. The undisputed facts viewed in the light most favorable to the plaintiff demonstrate that the plaintiff had knowledge of the alleged harm. Indeed, Attorney Zack told her that she needed to settle because he was "about to retire and it's time to make some money off of you off of this case and be done with it;" he had her sign blank forms; despite not authorizing Attorney Zack to settle, he settled the case against her wishes and without her knowledge; she "was very uncomfortable" and "in disbelief;" she was "disappointed in the whole process;" and she neither requested nor consented to the lump sum settlement. With these facts known to the plaintiff, receipt of the lump sum settlement check in 2017 was more than enough to put her on notice that Attorney Zack had settled her case without her knowledge or consent. In these circumstances, the evidence of alleged continued representation does not alter that conclusion.[5] As the judge put it, "[n]o amount of 'lulling'

---

[5] The plaintiff points to an October 2018 e-mail correspondence between Melisssa Brennan (Brennan) at Feinberg, Campbell & Zack, P.C. and Attorney Zack as evidence that the plaintiff was lulled into not timely filing her complaint. We disagree. In that e-mail exchange, Brennan indicated that she had "just talked to [the plaintiff] and she is very upset. She mentioned about calling [a] malpractice attorney but I think I

7

by [the defendants] in 2018 could change or obscure [Attorney] Zack's alleged violation of his ethical obligations in March 2017."  In short, the undisputed facts lead to the conclusion that there was no innocent reliance here.[6]  See Lyons, 436 Mass.

---

talked her off the ledge."  Attorney Zack responded that the plaintiff was "just messing with you.  Don't worry about her. . . .  She is upset because she wants to get more disability payments and I told her there ain't no more fruit on that tree."  Nothing in that e-mail contradicts or undermines the plaintiff's knowledge in 2017 that Attorney Zack had settled her case without her knowledge or consent.  Moreover, the record contains no evidence regarding the substance of the conversation between Brennan and the plaintiff beyond the vague e-mail itself.  Without any context as to Brennan talking the plaintiff "off the ledge," the exchange does not create a genuine issue of material fact.  See generally Jenkins v. Bakst, 95 Mass. App. Ct. 654, 659 & 660 n.9 (2019).

[6] In the alternative, the plaintiff cannot show on this record that the settlement caused her to lose G. L. c. 152, § 34A benefits.  Indeed, § 34A "is intended to mean total and permanent disability to earn wages."  Frennier's Case, 318 Mass. 635, 639 (1945).  Here, the record contains uncontradicted evidence that the plaintiff is capable of returning to work, and thus earn wages.  Therefore, the settlement did not cause the plaintiff to lose § 34A benefits.

at 247-248, 251.  Accordingly, we discern no error in the allowance of summary judgment.

Judgment affirmed.

By the Court (Massing,
  Neyman & Smyth, JJ.[7]),

Clerk

Entered:  April 30, 2026.

---

[7] The panelists are listed in order of seniority.