Williams *v.* Ely.

MARGARET C. WILLIAMS, executrix,[1] & others[2] *vs.* RICHARD
ELY & others.[3]

Norfolk. April 3, 1996. - August 8, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Limitations, Statute of. Evidence,* Burden of going forward. *Attorney at
Law,* Attorney-client relationship, Malpractice, Negligence. *Negligence,*
Attorney at law.

In a legal malpractice action, the judge's conclusion that the plaintiffs had
timely commenced their action within three years of the date on which

---

[1]Of the will of Ralph B. Williams.

[2]Thomas B. Williams; and Edward Condit, Jr., and Samuel Perkins,
executors of the will of Frances W. Perkins. Ralph B. Williams, Thomas B.
Williams, and Frances W. Perkins were siblings whom we shall refer to as
the plaintiffs.

[3]The defendants against whom judgment was entered who have filed a
brief on appeal, and whose appeal has not been dismissed by agreement, are
Irvin W. Cobb, Jr.; The Fiduciary Trust Company, Ruth M. Chilson, and
Joseph B. Ely, Second, executors of the will of Richard Ely; Chester M.
Howe; Sheldon A. Jones; Alan L. Lefkowitz; Arthur P. Schmidt; James M.
Storey; and Joseph W. Bartlett, all former partners of Gaston Snow & Ely
Bartlett (Gaston Snow).

The defendant appellees as to whom the action was dismissed on statute
of limitations grounds (because the judge ruled that an agreement to toll
the statute of limitations [tolling agreement] did not apply to them as
partners who left Gaston Snow before the agreement was executed) fall into
two groups. One group made up of former partners not named in the toll-
ing agreement consists of John W. Belash; Frederick D. Ballou and Peter
B. Loring, executors of the will of Gardner Cushman; Dawson C. Heron;
John B. Pierce, Jr.; Patricia B. Rice and Andrew M. Wood, executors of
the will of Harry F. Rice; and William A. Waldron. The second group
consists of former Gaston Snow partners who are named in the tolling
agreement but had left the firm before that agreement was executed. They
are Jordan P. Krasnow, Richard N. Bail, Edward O. Proctor, Jr., Robert
D. Canty, and Daniel B. Bickford.

The defendant appellees as to whom the plaintiffs want the judgment of
dismissal reversed and who joined the law firm of Gaston Snow after the
conduct that the plaintiffs say was negligent are Lynne B. Barr, Stephen E.
Cavan, Peter T. Healy, Ronald S. Katz, John M. Kimpel, Catherine A.
Ludden, John A. Mahaney, Edwin A. McCabe, and Susan H. Nycum.

they learned, or reasonably should have known, of the harm to them caused by the defendants' conduct was not clearly erroneous. [474-475]

Evidence in a legal malpractice action warranted the judge's conclusion that the plaintiffs were clients of the law firm in question. [475-476]

Evidence at the trial of a legal malpractice action warranted the judge's finding that the defendants were negligent and caused the plaintiffs to incur gift tax liabilities that they might not have incurred but for the defendants' negligence. [476-477]

The judge in a civil action acted within her discretion in declining to join or substitute a bankruptcy plan administrator as a plaintiff with respect to claims against a defendant who had participated in the bankruptcy plan of reorganization. [478]

In a legal malpractice action, the judge correctly concluded that the plaintiffs had not filed timely claims against certain defendants who were law partners when the acts of negligence occurred but who had left the firm before the execution of an agreement to toll the statute of limitations on behalf of partners remaining in the firm. [478-480]

Partners who had joined a law firm after malpractice had occurred were properly dismissed as defendants in a resulting civil action, where the partnership agreement did not provide that incoming partners would be personally liable for obligations arising from conduct that occurred before the incoming partners joined the firm. [480]

CIVIL ACTION commenced in the Superior Court Department on February 4, 1988.

The case was heard by *Suzanne DelVecchio, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Samuel Adams* (*Laurie C. Buck* with him) for Richard Ely & others.

*Michael B. Keating & Richard M. Brunell* for Ralph B. Williams & others.

*Allan van Gestel* for Lynne B. Barr & others.

*Thomas J. Sartory* for Jordan P. Krasnow & others.

*John O. Mirick* for John W. Belash & others.

*Stephen Wald* for Joseph Bartlett.

*Robert D. Canty,* pro se, was present but did not argue.

WILKINS, J. We deal with claims of legal malpractice asserted against certain former partners in the defunct Boston law firm of Gaston Snow & Ely Bartlett (Gaston Snow). A Superior Court judge ruled that some former Gaston Snow partners were liable to the plaintiffs, but that, for various reasons, others were not. The defendants assert that (1) this

action was barred by the statute of limitations; (2) neither the plaintiff Thomas B. Williams nor the plaintiff Frances W. Perkins were shown to have been Gaston Snow clients; and (3) the evidence warranted neither a finding of negligence nor a finding that the plaintiffs sustained harm as a result of the alleged negligence. We shall reject each of these enumerated arguments. After presenting the procedural background, we shall set forth the facts that bear on the enumerated issues, decide those issues, and then turn to the several questions bearing on which former partners are liable for the negligently caused harm.

This action was commenced on February 4, 1988, against Gaston Snow and all its then present and former (since 1975) partners. The issue of liability was separated for trial, and, in June, 1991, the Superior Court judge made findings and rulings and ordered judgment for the plaintiffs. In October, 1991, bankruptcy proceedings concerning Gaston Snow were commenced. In May, 1992, a bankruptcy judge allowed the plaintiffs to proceed to liquidate their claims. The trustee in bankruptcy and the plaintiffs settled the plaintiffs' claims against those partners who elected to participate in the bankruptcy reorganization plan. Those former Gaston Snow partners who are involved in this appeal, either as appellants or appellees, chose not to participate in the plan. The defendant former partners against whom judgment was entered have appealed. The plaintiffs have appealed from that portion of the final judgment that excluded certain former Gaston Snow partners from liability. We transferred the cross appeals here on our own motion.

In 1975, each plaintiff had contingent remainder interests in two testamentary trusts (family trusts), one created in 1926 and the other in 1948. In October, 1975, the plaintiff Ralph B. Williams, a vice president of The Fiduciary Trust Company until his retirement in 1982, consulted his cousin Charles Jackson, Jr., a partner in Gaston Snow, as to whether he could effectively disclaim his contingent interests under the family trusts and, if he did, whether he would be liable for any Federal estate or gift tax. Jackson referred the matter to a partner who dealt with estate planning matters. That partner circulated a memorandum among the firm's tax and estate planning partners, who approved it. In November, 1975, Jackson orally advised Ralph that disclaimers of his interests

in the trusts would not give rise to Federal estate or gift tax liability. That advice was confirmed by letters that the firm sent Ralph in January, 1976, concerning each family trust, stating unequivocally that "[t]he disclaimer gives rise to no Federal gift tax liability."

In December, 1975, Ralph executed two disclaimers, prepared and filed by Gaston Snow in the appropriate registries of probate, renouncing his remainder interests in the family trusts. In November and December, 1976, respectively, Ralph's siblings, the other plaintiffs Thomas B. Williams and Frances W. Perkins, executed similar disclaimers of their contingent interests in the family trusts, relying, according to the judge's findings, on Gaston Snow's advice. The firm filed those disclaimers, which Ralph had prepared, in the appropriate registries of probate in 1977.[4] Late in December, 1976, the firm sent each plaintiff a bill for its services concerning the disclaimers. Gaston Snow did not advise the plaintiffs to file Federal gift tax returns so as to initiate the three-year statute of limitations for gift tax liability. Nor did the firm advise Thomas or Frances that, if their disclaimers were recorded in 1976 rather than in 1977 (as was the case), the applicable rate of taxation on any taxable gift would be lower.[5]

The judge found that a competent estate planning attorney would have advised a client in 1975 that the law was unsettled, in that there was a risk of Federal gift tax consequences for a person disclaiming a remainder interest in a trust as each plaintiff did. The unsettled point was whether, in order to avoid adverse gift tax consequences, such a disclaimer had to be made (a) within a reasonable time after a contingent taker learned of the existence of his or her potential interest or (b) within a reasonable time after the remainder interest vested. In 1961, the Tax Court had taken the former position — a disclaimer may be made without adverse gift tax consequences only if made within a reasonable time after learning of the existence of the future interest. *Fuller* v. *Commissioner*, 37 T.C. 147 (1961). The Tax Court reaffirmed that position in 1972 in *Keinath* v. *Commissioner*,

---

[4]Thomas's disclaimer in one trust was initially filed in the wrong registry on December 30, 1976.

[5]See Tax Reform Act of 1976, Pub. L. No. 94-455, §§ 2009(b)(1), (e)(2), 90 Stat. 1520, 1893, 1896 (1976) (codified, as amended, at 26 U.S.C. § 2518 [1994]), effective January 1, 1977.

58 T.C. 352 (1972), but, on appeal from that decision, the United States Court of Appeals for the Eighth Circuit reversed. *Keinath* v. *Commissioner*, 480 F.2d 57 (8th Cir. 1973). That court said that a disclaimer made within a reasonable time after the remainder interest vested produced no adverse Federal gift tax consequences. *Id.* at 63, 64, 66. The ruling in the *Keinath* case was controlling only within the jurisdiction of the Eighth Circuit, and, as of 1975 and 1976, the Internal Revenue Service had not indicated that it acquiesced in the holding in the *Keinath* case. A consequence of these circumstances was that the Internal Revenue Service might take a position in another Federal circuit contrary to that stated in the *Keinath* opinion. Moreover, if the Internal Revenue Service were successful in another circuit, a conflict between circuit courts might prompt the Supreme Court to grant certiorari and, if it did, it might overrule the *Keinath* case. It is this risk of which Gaston Snow gave the plaintiffs no hint.

The possibility became a reality when, on February 23, 1982, the Supreme Court, in a six to three decision, in review of an opinion of the United States Court of Appeals for the Ninth Circuit (see *Jewett* v. *Commissioner*, 638 F.2d 93 [9th Cir. 1980] [rejecting the result in the *Keinath* case]), held that a gift tax was payable if a disclaimer had not been made within a reasonable time after the contingent taker learned of the existence of the interest. *Jewett* v. *Commissioner*, 455 U.S. 305 (1982). The plaintiffs, of course, had learned of their contingent remainder interests in the family trusts long before 1975.

In late December, 1984, Gaston Snow advised Ralph that the *Jewett* case applied to him and his siblings and that they had a Federal gift tax liability because of their disclaimers. This was, the judge found, the first notice that any plaintiff had of possible gift tax liability. In 1986, each plaintiff filed gift tax returns for the periods during which their respective disclaimers were filed, and paid all gift tax liabilities, including interest. These liabilities, the judge found, were incurred because the plaintiffs had relied on the advice of Gaston Snow that their disclaimers would not generate Federal gift tax liability and because Gaston Snow had failed to advise them, either in 1975 or shortly thereafter, to file gift tax returns and thereby start the running of the statute of limitations on any gift tax liability arguably flowing from the disclaimers.

In October, 1986, the plaintiffs and Gaston Snow entered into an agreement (tolling agreement) that purportedly tolled the running of the statute of limitations in this matter as of September 18, 1986, for a period of approximately six and one-half months. Later in this opinion we shall discuss which partners of Gaston Snow were bound by that agreement. As we have said, this action was commenced on February 4, 1988.

The judge ruled that there was an attorney-client relationship between the law firm and each plaintiff, although only Ralph had received gift tax advice directly from the firm. The firm was negligent, she ruled, in failing to advise the plaintiffs of the unsettled state of the law and was also negligent in failing to advise Thomas and Frances of the adverse tax consequences of not recording their disclaimers before January 1, 1977.[6] The judge also ruled that, because the plaintiffs first became aware of their claims against Gaston Snow in December, 1984, when the firm advised them of their tax liability, the three-year statute of limitations (G. L. c. 260, § 4 [1994 ed.]) had not run on September 18, 1986, the date as of which, by agreement, the running of the statute of limitations had been tolled. She concluded that the statute of limitations did not bar the action, ordered judgment for the plaintiffs on liability, and directed that the matter proceed to the determination of damages.

1. *Statute of limitations.* The defendants assert that this action was not commenced within the period required by the statute of limitations, that is, within three years of the date on which cause of action accrued. G. L. c. 260, § 4. As to those defendants governed by the tolling agreement concerning the running of the statute of limitations, this action is

---

[6]If a plaintiff had filed a gift tax return disclosing the disclaimers but not treating them as taxable gifts, the Commissioner might have assessed a deficiency. He did so in the circumstances that led to *Jewett* v. *Commissioner*, 455 U.S. 305, 307 (1982), in reaction to gift tax returns filed in 1972. Gaston Snow's failure in 1976 and 1977 to advise the plaintiffs to file gift tax returns, therefore, did not necessarily cause them to be liable to pay gift taxes, but that failure was a cause of the plaintiffs' liability for a considerable portion of the interest obligation on their unpaid gift taxes. Moreover, other beneficiaries disclaimed their interests in the family trusts about the same time as the plaintiffs did, filed informational gift tax returns, were not assessed a deficiency, and hence avoided any adverse gift (or estate) tax consequences from making the disclaimers.

time barred if the plaintiffs' cause of action accrued before September 18, 1983, that is, three years before the date as of which, by agreement, the running of the statute of limitations was tolled for six and one-half months. As to those defendants not covered by the tolling agreement, the action is time barred if the action accrued before February 4, 1985, that is, three years prior to the date the action was commenced (February 4, 1988).

The defendants assert that the plaintiffs' cause of action accrued, on February 23, 1982, when the United States Supreme Court decided *Jewett* v. *Commissioner, supra.* At that point, the plaintiffs' obligation to pay Federal gift tax was established. The defendants challenge the judge's ruling that the plaintiffs' claims did not accrue until December, 1984, when partners in Gaston Snow advised Ralph Williams that the *Jewett* case applied to him and his siblings and that each had a Federal gift tax liability.

The statute of limitations does not begin to run on a claim of malpractice until the plaintiff knows or reasonably should know that he or she has been harmed by the defendant's conduct. See *Riley* v. *Presnell*, 409 Mass. 239, 243 (1991); *Franklin* v. *Albert*, 381 Mass. 611, 619 (1980); *Hendrickson* v. *Sears*, 365 Mass. 83, 83-84 (1974).[7] The plaintiff need not know the extent of the injury or know that the defendant was negligent for the cause of action to accrue. See *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 206-208 (1990); *Olsen* v. *Bell Tel. Lab., Inc.*, 388 Mass. 171, 175 (1983). Once a client or former client knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer's conduct, the statute of limitations starts to run. See *Bowen* v. *Eli Lilly & Co., supra* at 208; *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268 (1985). In the context of this case, the statute of limitations began to run when the plaintiffs learned or should reasonably have learned that they had gift tax obligations, and not later when they paid their gift taxes and the precise measure of harm

---

[7]Some of our opinions have stated that a plaintiff seeking to show that the statute of limitations did not begin to run must demonstrate that the claim was "inherently unknowable," a standard that is no different from, and is used interchangeably with, the "knew or should have known" standard. See, e.g., *Melrose Hous. Auth.* v. *New Hampshire Ins. Co.*, 402 Mass. 27, 31-32 & n.5 (1988); *Olsen* v. *Bell Tel. Lab., Inc.*, 388 Mass. 171, 174-175 (1983).

caused by the defendants was fixed. If a defendant pleads the statute of limitations and demonstrates that the action was commenced more than three years after the date of the plaintiff's injury, the plaintiff has the burden of proving that the facts take the case outside of the statute of limitations. See *Riley* v. *Presnell, supra* at 243-244.

The question is whether, before September 18, 1983, the plaintiffs knew or reasonably should have known that they had been harmed by Gaston Snow's conduct. As to actual knowledge, the judge found that the plaintiffs first had notice in 1984 that they had a Federal gift tax liability. Because the tolling agreement tolled the running of the statute of limitations as of September 18, 1986, for six and one-half months, this action was commenced within three years of the date on which the plaintiffs learned of the harm to them and was, therefore, in that respect timely as to claims against defendants who are governed by the tolling agreement.

The more difficult question is whether the judge was justified in concluding that the plaintiffs commenced the action within three years of the date when they reasonably should have known that they had been harmed by the defendants' conduct. The judge found that the "first notice" that the plaintiffs had was from the firm in 1984 and that, on all the facts, that date was "reasonable." She was aware of and cited the proper legal standard (knew or should reasonably have known), but she made no explicit finding that the plaintiffs had proved by a preponderance of the evidence that, prior to September 18, 1983, they should not reasonably have been aware of harm caused by the defendants. It is apparent, however, that inferentially she made such a finding. The defendants challenge that implicit finding.[8] They argue that, because of the publicity that the *Jewett* opinion received in 1982 and Ralph's alleged professional expertise in estate planning and tax matters, Ralph must have known, or at least should have known, of the *Jewett* opinion and its consequences shortly after the opinion was released.

The problem for the defendants is that there was no evi-

---

[8]There is no evidence that Thomas and Frances should have learned of the harm before 1984. They can only be charged with notice of the harm they sustained if their brother Ralph should reasonably have known of the harm (and one were to assume that what Ralph knew should be attributed to his siblings).

dence that, even if Ralph had heard of the *Jewett* case, he reasonably should have known (a) of the implications for him of that decision; (b) that it applied retroactively to disclaimers made in 1975; (c) that the statute of limitations had not run on any gift tax liability; and (d) that he was obliged to file a gift tax return or, if he did not, the Internal Revenue Service would be likely to assess a gift tax. These are questions to which a lawyer, but not a lay person, might have known the answers. See *Hendrickson* v. *Sears,* 365 Mass. 83, 90 (1974). The inference certainly was not compelled that Ralph, who was not a lawyer, should reasonably have known them. See *id.*

Although the client has the burden of proving that he or she should not reasonably have known of the harm, once the client offers evidence that he or she did not know of the harm, the lawyer has the burden of coming forward with evidence that warrants a finding that the client reasonably should have known of the harm. See generally P.J. Liacos, Massachusetts Evidence, 225, 226 (6th ed. 1994). The fact that Ralph Williams was a professional fiduciary and trust officer and may have heard of the *Jewett* case before partners in Gaston Snow told him of it is not enough to make unwarranted a finding that, before September 18, 1983, Ralph reasonably should not have known of the harm caused by the defendants. The judge's implicit finding that the plaintiffs should not reasonably have known of the adverse gift tax consequences to them of the *Jewett* case was not clearly erroneous.

2. *Attorney-client relationship.* The defendants argue that the evidence did not warrant a finding that Thomas Williams or Frances Perkins were clients of Gaston Snow. The general rule is that an attorney owes a duty of care only to clients. See *Robertson* v. *Gaston Snow & Ely Bartlett,* 404 Mass. 515, 522, cert. denied, 493 U.S. 894 (1989); *DeVaux* v. *American Home Assurance Co.,* 387 Mass. 814, 817 (1983). An attorney-client relationship may be implied from the conduct of the parties. *Page* v. *Frazier,* 388 Mass. 55, 62 (1983). An attorney may owe a duty to nonclients who the attorney knows will rely on the services rendered. *Robertson* v. *Gaston Snow & Ely Bartlett, supra* at 524.

The judge was fully warranted in finding that Thomas and Frances were clients of Gaston Snow. Even if they were not clients, it is clear that Gaston Snow reasonably could infer

their reliance on the firm's advice. The firm's involvement in the filing of Thomas's and Frances's disclaimers, drafted by Ralph, and the firm's billing of Thomas and Frances for the firm's services (and their payment of funds in response) support the judge's finding of an attorney-client relationship. When the firm advised Ralph of the adverse impact on him of the *Jewett* case, Ralph was told to advise his siblings of the problem. The judge was fully warranted in finding that Thomas and Frances received advice from Gaston Snow. It seems clear that they would not have contributed toward payment of Gaston Snow's bills if they had received no legal advice from the firm.[9]

3. *Liability and damages.* The evidence warranted the judge's finding that the defendants were negligent and caused the plaintiffs to incur gift tax liabilities that they might not have incurred but for the defendants' negligence. The judge's conclusion that the defendants' advice fell below the standard of care and skill of lawyers practicing in the field was not clearly erroneous. The judge applied the proper legal standard. See *Fishman* v. *Brooks*, 396 Mass. 643, 646 (1986). Gaston Snow, she ruled, had the duty to advise the plaintiffs that the law in this area was unsettled, as other similarly situated attorneys would have done. It does not matter that the opinion that the disclaimers would generate no adverse gift tax consequences was a reasonable view of the law in 1975. The problem is not that Gaston Snow gave reasonable advice that in time proved to be wrong. The problem is that the apparent certainty of the opinion given, at a time when the issue was not conclusively resolved, denied the plaintiffs the opportunity to assess the risk and to elect to follow alternative estate planning options. If, as the judge found, attorneys in the estate planning and tax field would have advised clients of the risk, the failure of Gaston Snow to advise the plaintiffs of the risk was negligent.

The evidence did not support a finding that the plaintiffs

---

[9]The defendants argue that the evidence did not warrant a finding of what legal advice Ralph received from Gaston Snow before he disclaimed. This argument lacks substance. The judge could credit Ralph's testimony that, before he disclaimed his interests, he was advised orally that, if he disclaimed, he would not be liable for any Federal estate or gift taxes. Other evidence corroborates the judge's finding. It is true, but it is inconsequential, that the judge was wrong in finding that the firm's tax memorandum concerning Ralph's inquiries was distributed to the plaintiffs.

were sophisticated and appreciated the risks in spite of Gaston Snow's assurances. There was evidence that Ralph and Thomas knew that Gaston Snow did not guarantee that its opinion was correct. The absence of a guarantee does not, however, foreclose liability for the adverse consequences of a negligent failure to advise a client of the uncertainty of the advice given. See *Hendrickson* v. *Sears*, 365 Mass. 83, 90 (1974) ("The attorney owes his client a duty of full and fair disclosure of facts material to the client's interests").

The judge's conclusion that Gaston Snow's negligence caused harm to the plaintiffs was warranted by the evidence. She found that the plaintiffs would not have disclaimed their interests in the family trusts if Gaston Snow had advised them correctly. Ralph testified that he would not have disclaimed, if he had known that he might be subject to gift tax. Instead, he would have preferred not to disclaim and, therefore, be able to decide where the property would go, rather than have the terms of each family trust control the disposition of his share of the assets in that trust.[10]

The defendants' argument is that the plaintiffs were not harmed because, if the plaintiffs had not disclaimed and their respective shares of the family trusts came to them, their estates would have been obliged to pay estate taxes that were avoided because the disclaimers kept the assets of the family trusts from becoming their property. The defendants had the burden of showing that the plaintiffs obtained offsetting tax benefits. See *McKenna* v. *Commissioner of Mental Health*, 347 Mass. 674, 677 (1964); *G & R Corp.* v. *American Sec. & Trust Co.*, 523 F.2d 1164, 1176 (D.C. Cir. 1975). The judge concluded that it was speculative as to what the plaintiffs would have done with the family trust assets, if they had received them. They might have spent them, given them away (perhaps as gifts not subject to taxation), or kept them. Moreover, if the plaintiffs had been advised to file informational gift tax returns, the statute of limitations might have run on any gift tax liability and, if so (as happened to other disclaiming beneficiaries), the plaintiffs' estate and gift taxes would have been unaffected by the disclaimers.

---

[10]The defendants argue briefly that the judge erred in barring them from cross-examining Ralph Williams as to what he would have done if he had been told that there was only a slight risk of adverse tax consequences flowing from disclaiming his interests in the family trusts. The judge acted within her discretion in excluding that line of questioning as speculative.

The defendant appellant Joseph W. Bartlett raises an independent challenge to the entry of judgment against him, arguing that, pursuant to the plan of reorganization proposed by Gaston Snow's trustee in bankruptcy and confirmed by the Bankruptcy Court, the plaintiffs' claims against him have been assigned to the plan administrator. The reorganization plan was confirmed in September, 1993, five and one-half years after this action was commenced and after the judge had resolved the liability phase of this case against Gaston Snow. The trial judge thereafter declined to join the plan administrator as a party plaintiff. Under Mass. R. Civ. P. 25 (c), 365 Mass. 771 (1974), the substitution of a party when an interest has been transferred during the pendency of an action is within the judge's discretion (see *Cooke* v. *Walter Kidde & Co.*, 8 Mass. App. Ct. 902, 903 [1979]), as is the case under the cognate Federal rule (see *Luxliner P.L. Export Co.* v. *RDI/Luxliner, Inc.*, 13 F.3d 69, 71-72 [3d Cir. 1993]); *Mroz* v. *Lee*, 884 F. Supp. 246, 249 [E.D. Mich. 1995]; 7C C.A. Wright, A.R. Miller, & M.K. Kane Federal Practice and Procedure § 1958, at 555-557 [2d ed. 1986]). Bartlett did not demonstrate that he would be prejudiced by the failure to add the plan administrator. *Id.* at 555 ("the judgment will be binding on [the original party's] successor in interest even though he is not named"). The judge acted within her discretion in declining to join or substitute the plan administrator as a plaintiff.

4. *The plaintiffs' appeal.* We come now to the plaintiffs' appeal from the dismissal of their claims against (a) Gaston Snow partners who were partners when the acts of negligence occurred but had left the firm before the agreement tolling the statute of limitations was executed and (b) partners who joined Gaston Snow after the acts of negligence occurred.

(a) The judge correctly concluded that defendant partners who had left the firm before the tolling agreement was executed were not bound by it, and, therefore, when this action was commenced, the three-year statute of limitations had run. If the departed partners were not bound by the tolling agreement, the action was untimely because, as we have held, the

plaintiffs' causes of action accrued in 1984 and the action was commenced in 1988.[11]

The Gaston Snow managing partner who executed the tolling agreement did not waive the statute of limitations defense on behalf of persons who were no longer Gaston Snow partners. It does not matter that some former partners were named in the tolling agreement. If the managing partner was acting only on behalf of Gaston Snow's then current partners, the presence of former partners' names in the agreement was of no legal effect.[12]

The provisions of the tolling agreement show that it was not intended to toll the statute of limitations as to former partners. It lists many names and refers to those listed as "all members of the partnership" of Gaston Snow. It appears that the listing was taken by the plaintiffs' then counsel from a listing of Gaston Snow partners in a recent edition of Martindale-Hubbell Law Directory. No attempt to list former partners was made.[13] Thus, the parties did not undertake to waive the continued running of the statute for other than current Gaston Snow partners. The firm's managing partner signed the agreement "as a duly authorized agent of each of the members of [Gaston Snow]." Certainly the managing

---

[11]The plaintiffs claim that the defendants who prevailed on their statute of limitations defense waived the statute of limitations. The importance of aggressively asserting that defense became clear only when Gaston Snow's bankruptcy proceedings were commenced. The defense was pleaded, and the judge was justified in considering it, in her discretion, even after the liability phase of the trial had been concluded.

[12]A modified form of this argument is made belatedly in the reply brief filed on behalf of several appellant defendants who were partners at the time of the malpractice and were still partners when the tolling agreement was executed, but left the partnership before one or more extensions of that agreement were executed. They claim that the extension agreements could not apply to them as departed partners. The extension agreements are irrelevant for statute of limitations purposes. The plaintiffs grant that the statute of limitations began to run in December, 1984. The tolling agreement, exclusive of extensions, excluded for statute of limitations purposes a six-and-one-half month period between September 18, 1986, and April 1, 1987. This action was, therefore, seasonably commenced on February 4, 1988.

[13]Those former partners who were listed in the tolling agreement had left the firm after the Martindale-Hubbell listing had been prepared.

partner had authority to bind current partners.[14] He did not purport to bind former partners.[15]

(b) Those partners who joined Gaston Snow after the malpractice had occurred (incoming partners) were properly dismissed from the action. Incoming partners are generally liable only to the extent of partnership assets. G. L. c. 108A, § 17 (1994 ed.). See *Van Dyke* v. *Bixby*, 388 Mass. 663, 666 (1983). The plaintiffs argue, however, that each incoming partner agreed to assume the liabilities of the partners who were partners when the malpractice occurred (at least any such partner who withdrew after an incoming partner arrived). The plaintiffs assert that they are third-party beneficiaries of those agreements. The theory on which the plaintiffs rely is generally sound. See J.A. Crane & A.R. Bromberg, Partnership § 88, at 502 (1968). The partnership agreement, however, does not provide that an incoming partner is personally liable for obligations arising from conduct that occurred before the incoming partner joined the firm. Language concerning the assumption by the remaining partners of partnership liabilities (and the indemnification of a partner) when a partner withdraws from the partnership cannot fairly be read to grant third parties the right to impose *personal* liability on an incoming partner for the consequences of conduct preceding the incoming partner's arrival, and thereby does not overcome the general rule stated in G. L. c. 108A, § 17.

*Judgment affirmed.*

---

[14]The defendant appellants against whom judgment was entered argue, for the first time in their reply brief, that the managing partner did not have authority to execute the tolling agreement on their behalf. Taking action on behalf of the members of a law firm is what a managing partner is supposed to do. Handling claims against the firm, hiring counsel to defend claims, considering litigation strategies, and agreeing to a tolling of the statute of limitations on behalf of current partners are all part of the "business of the partnership in the usual way" (G. L. c. 108A, § 9 [2] [1994 ed.]).

[15]We need not discuss whether the managing partner had authority to bind persons who were no longer partners. After dissolution of a partnership, a partner may bind the partnership in various respects. G. L. c. 108A, § 35 (1994 ed.). Gaston Snow continued as a partnership, but the departure of a partner is a dissolution of the partnership (G. L. c. 108A, § 29 [1994 ed.]).