van Gestel, J.
This matter comes before the Court on the motion by the defendants for summary judgment. The case is a legal malpractice claim. For the reasons noted below, the motion is DENIED.
BACKGROUND
The background facts necessary to understand the Court’s decision on the summary judgment motion reveal a difficult and very close issue.
In the context of the 1991 bankruptcy of the Bank of New England Corporation (BNEC), the Federal Deposit Insurance Corporation put BNEC’s subsidiary, the Bank of New England (the Bank), into receivership. The plaintiff Eugene McCulloch, Jr. (McCulloch), before May 31, 1990, had been president of a subsidiary of the Bank, New England Merchants Leasing Corporation (NEMLC). On that date, certain leases and other assets of NEMLC were sold by the Bank to the Bank of Tokyo. The Bank of Tokyo created a new entity, the other plaintiff here, BOT Financial Corporation (BOT), to operate the leasing business acquired from the Bank. At the time of the sale of the assets, McCulloch retired as president of NEMLC and became president of BOT.
The underlying legal issue prompting this lawsuit relates to the possibility that McCulloch, at the time of his retirement from NEMLC, may have had certain rights under a retirement plan sponsored by BNEC. After the BNEC bankruptcy and the Bank’s FDIC receivership, payments to McCulloch trader the retire *542 ment plan made by the Bank ceased. BOT, In Its agreement to hire McCulloch as president, contracted with him such that any payments made to him under the BNEC retirement plan would enure to BOT in return for the compensation to be paid to McCulloch by BOT.
BOT and McCulloch engaged Goldstein & Manello to advise them on the issue of rights under the retirement plan and, more specifically, as to whether there was any basis for a claim against the FDIC as receiver of the Bank. Joseph Manello (Mr. Manello) was the lawyer in charge of the matter for Goldstein & Manello.
Mr. Manello examined the retirement plan, made inquiries about the plan from its former administrator, and advised BOT and McCulloch that, in his opinion, McCulloch’s only rights lay against the trustee in bankruptcy of the plan’s sponsor, BNEC; that a claim against the FDIC was without merit; and, that Gold-stein & Manello would file a claim in BNEC’s bankruptcy, but would not pursue a claim against the FDIC. The basis for Mr. Manello’s view was that in the absence of an express agreement by the Bank to assume the obligations of the plan, the parent corporation, BNEC, could not impose those obligations on its subsidiary. Included in Mr. Manello’s advice was the comment that the filing of a false claim against the FDIC could subject McCulloch to criminal penalties. He also advised BOT and McCulloch of the filing deadline for claims against the FDIC.
McCulloch, who doubted that Mr. Manello was correct in his view and had tried, unsuccessfully, to persuade him to the contrary, was invited to join a group of other participants in the plan who had retained another Boston law firm to evaluate making claims against the FDIC. McCulloch, elected not to join the other group and the deadline for his filing a claim against the FDIC passed. The other group went ahead and filed claims against the FDIC. They subsequently were successful in settling their claims with the FDIC for nearly 90% of their value.
DISCUSSION .
The test to be applied to a motion for summary judgment is well known. “The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Mass.R.Civ.P. Rule 56(c).
A claim for legal malpractice arising out of the advice of a lawyer to a client in the circumstances here of advising against the pressing of a claim requires proof that: (1) the claim to be pressed was meritorious; (2) the lawyer failed to exercise reasonable care and skill in giving the advice; and (3) the lawyer’s negligence was the proximate cause of loss to the client. An attorney is not liable for an error in judgment in advising a client, so long as the attorney’s advice and conclusions were reasonable, regardless of whether they were legally correct. Mallen & Smith, Legal Malpractice, (4th Ed.) Vol. 3, Sec. 22.5, p. 12. See, also, Colucci v. Rosen, Goldberg, Slavet, Levinson & Wekstein, P.C., 25 Mass.App.Ct. 107, 111 (1987).
Assessing the correctness of Mr. Manello’s advice regarding the viability of the claim against the FDIC is not without its complexity. There are factors relating to the interplay between the first plan[3] with the Bank as sponsor and the second plan with BNEC as sponsor, the legal relationship between the Bank and the BNEC, the Bank’s receivership and the gloss over claims against the FDIC by the decision in D’Oench Dhume & Co. v. FDIC, 315 U.S. 447 (1942), and the vast array of law following in its wake.[4] One thing is clear to this Court, however. It cannot be said that there was no reasonable basis for Mr. Manello’s conclusions and advice. Thus, if that were as far as matters went this case should end in the defendants’ favor.
Not only was there a reasonable basis for Mr. Manello’s advice, he went a step further and advised his clients of the deadline for filing a claim against the FDIC, if they chose to do so, enough in advance for that action to be taken.
Until the Supreme Judicial Court’s very recent decision in Williams v. Ely, 423 Mass. 467 (1996), this Court would have acted favorably on the defendants’ motion. In Williams the court dealt with claims of legal malpractice arising out of advice given relating to gift tax liability to certain heirs if they disclaimed their contingent interests in certain family trusts. The advice given — that there would be no gift tax liability— was a fair assessment of the unsettled state of the law at the time. Several years later, however, the U.S. Supreme Court addressed the underlying tax law issue and held to the contrary. The heirs, who by then had disclaimed their interests as contingent remaindermen, became subject to substantial gift tax liability and responded by suing their lawyers. In affirming the decision on liability in Williams the SJC said, at p. 476:
The problem is not that Gaston Snow gave reasonable advice that in good time proved to be wrong. The problem is that the apparent certainty of the opinion given, at a time when the issue was not conclusively resolved, denied the plaintiffs the opportunity to assess the risk and to elect to follow alternative estate planning options.
In the case under consideration there are important — material—factual issues in dispute that may or may not put this case in the same category as Williams v. Ely. How strong was Mr. Manello’s statement, if made, that the filing of a claim against the FDIC could, or would, result in criminal charges against McCulloch? With what certainty was it given, and under what circumstances? Was the statement so strong that it dissuaded McCulloch, despite his doubts, from pursuing the matter further? Was Mr. Manello’s warn *543 ing of criminal charges the real reason why McCulloch chose not to pursue the claim against the FDIC or were there other factors at play? These and other questions of like nature may only be answered by a jury. They cannot be determined on the present motion.
ORDER
For the reasons stated above, the motion of the defendants seeking summary judgment must be DENIED.

 There was an earlier plan adopted in 1983 sponsored by the Bank. The plan in issue was adopted in 1987 by BNEC and purported to succeed the earlier plan.

 The settlement between the FDIC and the other claimants represented by the other law firm may not be conclusive proof that Mr. Manello’s advice was incorrect, but it certainly raises questions.