Welch, J.
This case, filed in 1998, alleges legal malpractice which occurred a decade before. The question is whether this former client waited too long to sue these lawyers. Recognizing that it is not easy for a layperson to recognize malpractice and acknowledging that it is disruptive (to put it mildly) to allege malpractice while represented by the same counsel, the law has extended the three-year statute of limitation using various doctrines. At a certain point, however, any claim becomes untimely if not filed. The question is whether this one is barred.
Plaintiff Lyons is one of two co-trustees of the Robin Damon Trust. The primary asset of the Trust was the Salem Evening News. In 1987, a William Dean Singleton expressed interest in purchasing this asset for approximately 40 million dollars. The plaintiffs co-trustee, Cyrus Neubegin, was not interested in selling the Salem Evening News. Plaintiff Lyons, however, was interested and retained attorneys from the law firm of Ropes & Gray to advise him as co-trustee as to how to consummate this sale.
Ropes & Gray was retained by Lyons in December of 1987. Ropes & Gray always represented Lyons in his capacity as co-trustee. The law firm did not represent the Trust. In February of 1988, William Dean Singleton sweetened his offer to purchase the Salem Evening News to an amount of 42.5 million dollars. Co-trustee Neubegin continued to oppose the sale of the newspaper. Later in that year, sometime in October of 1988, Singleton lost interest in purchasing the newspaper due to Neubegin’s unwillingness.
Various members of the Spinner family are beneficiaries of this Trust. At least by 1992, these beneficiaries were extremely disappointed in the trustees’ inability to sell the Salem Evening News to a potential purchaser such as Singleton at such an attractive price. As a result, in July of 1992, the Spinner family began to seek to remove Lyons as a co-trustee and to surcharge him. The Spinner family also initiated a legal malpractice suit against Ropes & Gray claiming that the law firm had committed malpractice in failing to consummate the sale of the Salem Evening News to Singleton.
The Spinner family's lawsuit, Spinner v. Nutt, was unsuccessful. The case was dismissed due to the fact that Ropes & Gray owed no duty to the Spinner family. Ropes & Gray had been hired by, and owed a duty only to, plaintiff Damon Lyons as co-trustee of the Trust. The dismissal was afín med by the Supreme Judicial Court. As the Supreme Judicial Court reasoned: “the beneficiaries may bring an action against the trustees and the trustees, in turn, may bring an action against (their) attorneys if appropriate.” Spinner v. Nutt, 417 Mass. 549, 555 (1994).
In the interim (on July 19, 1993), plaintiff Damon Lyons filed, for completely unrelated personal reasons, a personal bankruptcy petition. Plaintiff Lyons was represented by separate bankruptcy counsel during the course of the bankruptcy. Undeterred, and taking their cue from the Supreme Judicial Court’s decision, the Spinner family hired counsel and corresponded with Lyons’ bankruptcy trustee in an attempt to urge the trustee to pursue Lyons’ malpractice claim against Ropes & Gray. In a detailed letter dated February 10,1995, counsel for the Spinner family detailed why “we think, Lyons’ malpractice claim, although not yet filed, is property of the estate under section 541(a) [of the United States Bankruptcy Code].” The trustee in bankruptcy never pursued the purported malpractice claim.
In March in 1995, the primary asset of the Trust, namely the Salem Evening News, was sold for approximately 16.5 million dollars. This, obviously, is significantly less than the Singleton offer made approximately seven years before.
In the meantime, the Spinner family was still pursuing various claims against plaintiff Lyons in the *159 Probate Court and attempting to remove him as the co-trustee of the Trust. In approximately “June or early July 1995,” Mr. Hannigan (one of the Ropes & Gray attorneys representing the plaintiff] told [the plaintiff] “that the firm of Ropes & Gray would have to withdraw from the Probate cases because certain lawyers from the firm may become witnesses in the Probate cases since the petition for removal of me as co-trustee turned on the handling of the Singleton offer and a failure to diversify or sell the major asset of the Trust.” Affidavit of Damon Lyons in opposition to defendant's motion for summary judgment (para. 18). Ropes & Gray suggested that the plaintiff hire Attorney William Looney understanding that “Ropes & Gray would not continue as my lawyers.” The plaintiff met with Mr. Looney and Mr. Hannigan at Ropes & Gray on July 25, 1995. Affidavit of Damon Lyons, para. 21. Mr. Lyons understood that, as of July 25, 1995, Mr. Looney was representing him. Deposition of Damon Lyons, page 102 (confirming that July 25, 1995 was “when Bill Looney took over”). The plaintiff understood that Ropes & Gray would be “assisting my case as witnesses” and that Ropes & Gray would provide materials from their files to William Looney. Ropes & Gray filed a formal notice of withdrawal in the Probate Court action, dated August 7, 1998.
On July 31, 1998, plaintiff Lyons filed this legal malpractice suit against the defendants. This malpractice suit contains, in essence, the same substantive allegations of malpractice as was contained in the Spinner v. Nutt case.
The question presented by the defendants’ latest motion for summary judgment is whether this case is barred by the applicable three-year statute of limitations. No one disputes that the three-year statute of limitations for legal malpractice cases, contained in G.L.c. 260, §4, controls. The issue is whether the statute of limitations has been equitably tolled by either the discovery or “continuing representation” doctrine: After viewing the extensive briefs, appendices, and considering the arguments of counsel, this court concludes that the statute of limitations expired prior to the July 31, 1998 filing date.
The law in this area is well settled. The three-year statute of limitations does not begin to run on a claim of legal malpractice until the plaintiff knows or reasonably should know that he or she has been harmed by the defendant’s conduct. See Williams v. Ely, 423 Mass. 467, 473 (1996); Riley v. Presnell, 409 Mass. 239, 243 (1991). This is the so-called discovery rule. Under this rule, the statute of limitations begins to run when an injury is no longer “inherently unknowable,” and a reasonably prudent person in the plaintiffs position, reacting to any suspicious circumstances of which he might be aware, should have discovered the harm and its cause. Bowen v. Ely Lilly & Company, 408 Mass. 204, 206-08 (1990). The test is an objective one. “Once a client or former client knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer's conduct, the statute of limitations starts to run.” Williams v. Ely. 423 Mass. at 473. The plaintiff need not know “the extent of the injury or know that the defendant was negligent for the cause of action to accrue.” Id. Instead, the test focuses on when the client reasonably should have known that he or she had sustained some sort harm resulting from the lawyer’s conduct and, thus, had the responsibility of investigating whether this harm was the result of legal malpractice.
As an overlay on the “discovery rule” in the legal malpractice area, the Supreme Judicial Court has consistently adopted the doctrine of “continuing representation.” The continuing representation doctrine tolls the statute of limitations in a legal malpractice action “where the attorney in question continues to represent the plaintiff s interest in the matter in question.” Murphy v. Smith, 411 Mass. 133, 137 (1991). The continuing representation doctrine “recognizes that a person seeking professional assistance has the right to repose confidence in the professional’s ability and good faith and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.” Cantu v. St. Paul Company, 401 Mass. 53, 58, quoting Greene v. Greene, 56 N.Y.2d 86, 93-94 (1982). The continuing representation doctrine does not apply where “the innocent reliance which the continued representation doctrine seeks to protect is not raised by the facts." Cantu v. St. Paul, 401 Mass. at 58. In other words, just as with the discovery doctrine, should a client reasonably have known that his lawyer’s actions caused him some appreciable harm, the statute of limitations clock begins to tick.
“Although the client has the burden of proving that he or she should not reasonably have known of the harm, once the client offers evidence that he or she did not know of the harm, the lawyer has the burden of coming forward with evidence that warrants a finding that the client reasonably should have known of the harm.” Williams v. Ely, 423 Mass. at 475. When a client should reasonably know of the appreciable harm resulting from his or her lawyer’s conduct, often is a question of fact. Still, what is “inherent knowability” is not a fact, but rather a conclusion to be drawn from the facts. On an appropriate record, therefore, a court may determine when a cause of action accrued and grant summary judgment on the question of whether a statute of limitation has run. Malapanis v. Shirazi, 21 Mass.App. 378, 383 (1986).
Summarizing the law is easy. Applying the law to the facts of the case is often more difficult. Nevertheless, after reviewing those facts which are undisputed in this case, considering the various sworn testimony provided, and taking any disputed fact in the light most favorable to the plaintiff, this court confidently concludes that, as a matter of law, the statute of *160 limitations has run. The plaintiff has testified that he chose Ropes & Gray to represent him as the co-trustee of the Trust because of that firm’s “excellent reputation.” He was consistently represented by Ropes & Gray in relation to his position of co-trustee from 1987 until July 25, 1995. Throughout that period of time, the plaintiff trusted the advice of Ropes & Gray and thought that the firm in general was doing a good job. Affidavit of Damon Lyons paras. 8, 18, 19, 21, 26. Despite having confidence in the law firm of Ropes & Gray, the plaintiff apparently was aware that at least a certain lawyer within Ropes & Gray had committed legal malpractice as early as 1989. The plaintiffs testimony at his deposition is telling:
Q: Sir, when was it in time that you first came to the conclusion that Ropes & Gray, or more specifically certain lawyers — Bob Gad seems to be the prime target — had acted with malpractice?
[Plaintiffs counsel]: Object to the form, you can answer that.
A: That would be January — 89, when you discharged him or Ropes & Gray discharged him from the case?
Q: January 89?
A: Have I got the wrong date? Bob Gad went on a full year, O.K.? Then an internal — whatever—occurred within Ropes & Gray, and he stepped out? And Mike Harrington stepped in?
A: Yes.
Q: And you felt at the time that there had been malpractice?
A: Up to that point?
Q: Yes.
A: Yes, and thereafter too.
Q: O.K. Did you ever express that view to any lawyer at Ropes & Gray?
A: No. I wasn’t going to spit in their face. They were my lawyers, you know. They knew what they were doing. They — if they didn’t counsel me, fine. They knew what — but still they knew what they were doing. But it turns out they didn’t.
Q: When did you conclude — this is the date I’m trying to get — when did you conclude that they didn’t know what they were doing?
A: When Dean Singleton went away.
Q: When was that? Is that the October, — 89—88 date we have been taking about?
A: I believe so. When he went away.
Deposition of Damon Lyons pages 100-01. The plaintiff cites no other portion of his deposition which contradicts this testimony. The plain words of this deposition testimony indicate that the plaintiff, while impressed with the reputation of Ropes & Gray, and their general representation of him, was aware that at least one Ropes & Gray attorney (a Bob Gad) had committed malpractice and that Ropes & Gray “didn’t know what they were doing” when the attractive offer to purchase the Salem Evening News by William Dean Singleton “went away” in October 1988. The only conclusion is that this client knew of the appreciable harm (the loss of an attractive offer) and had linked it to the conduct of his attorneys.
The plaintiff attempts to defuse this damaging testimony by submitting an affidavit in which he states that he only came to the conclusion that Ropes & Gray was negligent on not acting on the Singleton offer after he consulted his new attorneys in 1998. See affidavit of Damon Lyons paras. 23-25. The submission of such contrary assertions in an affidavit after the giving of deposition testimony does not serve to defeat a motion for summary judgment. “A party cannot create a disputed issue of fact [simply] by . . . contradicting by affidavit certain statements previously made under oath at a deposition.” Hanover Insurance Company v. Leeds, 42 Mass.App. 54, 58 (1997), quoting, O’Brien v. Analog Devices, Inc., 34 Mass.App. 905, 906 (1993). There may be situations where a client who later initiates a legal malpractice claim should not be held to his estimates of when malpractice occurred. In the context of this case, however, there is nothing unfair about holding the plaintiff to his prior deposition testimony. The plaintiff, who is not unfamiliar with legal proceedings, was represented by counsel throughout the deposition. The questions asked were not confusing and were phrased in layperson’s terms. The answers given expressed no uncertainty and were explanatory in nature. No other part of the deposition contradicts the testimony given. In these circumstances, it is fair to hold the plaintiff to his testimony under oath which states that he was aware that his attorneys “didn’t know what they were doing” once the Singleton offer was withdrawn in 1988.
Certainly any appreciable harm was more than apparent to the plaintiff (if not in 1988 when Singleton walked away) in March of 1995 when the Salem Evening News was sold, not for 42.5 million dollars but for 16.5 million dollars. Thus, even though the defendant was still represented by Ropes & Gray in March of 1995, the continuing representation doctrine would not apply after that date as any reasonable person in the plaintiffs position would be aware of the very significant harm and the plaintiff had already linked that harm to his attorney’s actions back in 1988. See Cantu v. St Paul Companys, 401 Mass, at 57. Although the plaintiff states in his deposition that he did not reach the conclusion that “Ropes & Gray was negligent” until 1998, that is not the test. The plaintiff need not know “that the defendant was negligent for cause of action to accrue.” He only need know of the appreciable harm resulting from his lawyer’s conduct. Williams v. Ely, 420 Mass, at 473. See also Spilios v. Cohen, 38 Mass.App. 338, 339 (1995).
Even if one was not to hold the plaintiff to his deposition testimony, it is apparent that any pur *161 ported negligence on the part of Ropes & Gray was not “inherently unknowable" by the time the principal asset of the Trust was sold in October 1995 at a fraction of the price proposed by Singleton in 1988. Long before October of 1995, it was apparent to any reasonable person, never mind a co-trustee of the Trust, that the beneficiaries were alleging that Ropes & Gray had been negligent in allowing the Singleton offer to vanish. After all, the Spinner family beneficiaries had sued Ropes & Gray making these precise allegations in August of 1992. By April on 1994, when the Supreme Judicial Court affirmed the dismissal of the Spinner v. Nutt action, it was apparent that the beneficiaries did not have a cause of action against Ropes & Gray but that this very plaintiff was entitled to bring a cause of action for any purported legal malpractice. Of course, the Supreme Judicial Court decision in Spinner v. Nutt did not confirm that a viable malpractice claim existed. Yet by the time that the principle asset of the Trust is sold, in March of 1995, for 26 million dollars less that was offered in 1988, a reasonable person would be aware of the considerable harm that had occurred and would be put on notice to investigate the beneficiaries’ claims that Ropes & Gray had mishandled the Singleton deal. This would be true despite the fact that one's current lawyer (i.e. Ropes & Gray) continually was assuring the client that the law firm had not committed legal malpractice.
There exists a coup de grace in this case. The plaintiff admits both in his deposition (page 102) and in his affidavit (paras. 18 and 21) that Ropes & Gray informed him in June or early July of 1995 that they would have to withdraw from representing him. The plaintiff admits that Ropes & Gray arranged for the plaintiff to be represented by Mr. William Looney and that he met with Looney on July 25, 1995. It was on this date that “Bill Looney took over” (deposition page 102) and that Ropes & Gray took “steps to transition to new counsel.” (Affidavit para. 21.) The plaintiff understood that Ropes & Gray would not continue be his lawyer. (Affidavit para. 21.) The fact that Ropes & Gray lawyers might be witnesses for him at any upcoming Probate Court trial does not constitute continuing representation. For the “continuing representation” doctrine to apply there must be “clear indicia of an ongoing, continuous, developing and dependent relationship between the client and attorney.” Cormier v. Deren, no. 96-2293 A, 8 Mass. L. Rptr. 5, 1997 Mass. Superior LEXIS 29, at 8 (November 5, 1997) (Burnes, J.) (and authority cited). Once new counsel, in this case, William Looney, took over, the continuing representation doctrine did not apply because the reliance on the original attorney has been terminated and new counsel could assess the original attorney’s performance. See Cantu v. St Paul Company, 401 Mass. at 58. In this case, the formal filing of a notice of withdrawal in the probate matter by Ropes & Gray (on or about August 7, 1995) is immaterial in that it is undisputed that William Looney took over as the plaintiff s attorney as of July 25, 1995. The promise to be available as a witness at a later court hearing, or the transfer of files and other information to new counsel, or the formal filing of notices of withdrawal do not amount to continuing representation. See Worthington v. Rusconi, 29 Cal.App.4th 1488, 1493, 1498 (Cal.Ct.App. 1994) (and authorities cited). Thus, any continuing representation by Ropes & Gray of the plaintiff terminated as of July 25, 1995. This action was not filed within three years of that date.
For the reasons set forth above, the defendant’s motion for summaryjudgment must be granted. Judgment is- to enter for the defendants.