van Gestel, Allan, J.
This matter is before the Court on the Motion for Summary Judgment of Defendants Allen Bress and Sullivan & Bress, P.C., Paper #21. The motion is predicated on the statute of limitations found in G.L.c. 260, sec. 4.

BACKGROUND

The plaintiffs (collectively “Marketplace Center”), claim that the defendants Allen Bress (“Bress”) and Sullivan & Bress, P.C. (collectively “Sullivan & Bress”) committed legal malpractice by failing to provide certain documentation requested by the City of Boston Assessing Department, which, it is claimed, resulted in the dismissal of Marketplace Center’s tax abatement appeals for the fiscal years 1994-1998. This suit was filed on January 10, 2002.
The City requests information from taxpayers pursuant to G.L.c. 59, sec. 38D[3] (“sec. 38D requests”) to calculate the fair cash value of the property prior to the tax assessment date. In this matter, the City sent sec. 38D requests for each of the fiscal years 1994 through 1998, and Markeplace Center never responded. Bress was Marketplace Center’s attorney handling its tax abatement applications and was responsible for responding to the City’s sec. 38D requests.
Sec. 38D provides, “Failure of an owner or lessee of real property to comply with such request within sixty days after it has been made shall bar him from any statutory appeal under this chapter, unless such owner or lessee was unable to comply with such request for reasons beyond his control.”
When Marketplace Center did not respond to the sec. 38D requests, the City Assessors “valued and assessed the subject property without the benefit of timely, property-specific, owner-supplied 38D responses.” The City assessed the value of Marketplace Center’s property at 200 State Street in each of the fiscal years at issue as follows: 1994, $55,444,000; 1995, $58,206,500; 1996, $60,866,000; 1997, $65,950,500; and 1998, $78,139,000.
In May of 1997, Bress left Sullivan & Bress to pursue other interests, and stopped practicing law immediately thereafter. Following Bress’s departure, James F. Sullivan, Jr. (“Sullivan, Jr.”), began to represent Marketplace Center in relation to its tax abatement issues.
Sullivan’s father, James F. Sullivan, Sr., not Sullivan, Jr., was the “Sullivan” in Sullivan & Bress.
On August 12, 1997, the City of Boston filed a Motion to Dismiss Marketplace Center’s 1997 tax abatement appeal based on the failure to respond to the City’s sec. 38D requests. This motion was denied by the Appellate Tax Board on September 12, 1997.
*381 In March of 1998, when Sullivan, Jr. still was handling the tax abatement matters for Marketplace Center, the parties agreed to consolidate the appeals that included the fiscal years from 1994 through 1997.
In April of 1998, the firm of Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. (“Mintz, Levin”) took over from Sullivan, Jr. the representation of Marketplace Center on its tax abatement issues. At that time the parties were heavily involved in discoveiy issues. On April 3, 1998, the City served Marketplace Center with discoveiy requests relating to the sec. 38D request issues. These discoveiy requests focused on Marketplace Center’s failure to respond to the sec. 38D requests. Mintz, Levin responded to the City’s discoveiy requests.
On December 3, 1998, the City of Boston filed another Motion to Dismiss Marketplace Center’s tax abatement appeals, this time for all of the fiscal years from 1994 through 1998, again for failure to respond to the sec. 38D requests. Mintz, Levin filed a memorandum in opposition to this latest Motion to Dismiss on December 11, 1998. The opposition was accompanied by an Affidavit from Bress in which he conceded that he was responsible for Marketplace Center’s response to information requests by the City for fiscal years 1994 through 1998.
Eventually, on Januaiy 13, 1999, the Appellate Tax Board granted the City’s Motion to Dismiss Marketplace Center’s tax abatement applications for fiscal years 1994 through 1997 for failure to comply with the provisions of sec. 38D. Later, on December 21, 1999, the Appellate Tax Board granted a similar Motion to Dismiss with regard to the fiscal 1998 tax appeal.
Mintz, Levin billed nearly $20,000 for its 1998 work. The Mintz, Levin billing is reflected as early as an August 28, 1998, invoice for $6,261 for legal services to Marketplace Center that covered services that began at least as early as April 28, 1998. These services, in significant part, related to sec. 38D request issues.

DISCUSSION

Summary judgment is granted where there are no genuine issues of material fact, and the moving parly is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. Rule 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
“Because the statute of limitations has been raised by [Sullivan & Bress] as a defense to Marketplace Center’s claims, at trial Marketplace Center will bear the burden of showing that its action was timely filed.” Plaintiffs’ Opposition to Defendants’ Motion for Summary Judgment, p. 5. See also Williams v. Ely, 423 Mass. 467, 474 (1996). But Marketplace Center argues here that all it needs to do in responding to this motion for summary judgment is to demonstrate that a genuine issue of fact exists to be tried.
The evidence before the Court on summary judgment should be viewed in the light most favorable to Marketplace Center, it being the non-moving parly. Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 708 (2005). But, if the parly moving for summary judgment does not bear the burden of proof at trial — as Marketplace Center concedes is the case here — that party can demonstrate the absence of a triable issue by submitting affirmative evidence negating an essential element of the non-moving party’s case. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
The statute of limitations for legal malpractice requires that the action “shall be commenced only within three years next after the cause of action accrues.” G.L.c. 260, sec. 4. The focus then must be on the issue of when the action accrued here.
The statute of limitations does not begin to run on a claim of malpractice until the plaintiff knows or reasonably should know that he or she has been harmed by the defendant’s conduct... The plaintiff need not know the extent of the injury or know that the defendant was negligent for the cause of action to accrue .. . Once the client or former client knows or reasonably should know that he or she has sustained appreciable harm as a result of a lawyer’s conduct, the statute starts to run.
Williams, supra, 423 Mass. at 473.
The question here is whether before Januaiy 10, 1999, Marketplace Center, in connection with its 1994-1998 tax abatement appeals, knew or reasonably should have known, that it had been harmed by Bress’s conduct in failing to respond to the sec. 38D requests.
Marketplace argues that it did not know it had been harmed by Bress’s negligence until Januaiy 13, 1999, when the Appellate Tax Board, for the first time, allowed one of the City’s motions to dismiss for failure to comply with the sec. 38D requests. Marketplace Center suggests that
Until January 13, 1999, [it] had no reason to believe that Mr. Bress’ failure to respond to the City’s 38D Requests had caused it any harm. Its 1997 tax abatement appeal had proceeded on its merits after the ATB’s rapid denial of the City’s first motion to dismiss. The City had communicated to Mr. Sullivan that its motion to dismiss was “experimental.” ... A respected attorney specializing in tax abatement proceedings had told Mr. Sullivan that Marketplace Center would probably avoid dismissal on 38D grounds, and so far that had proved accurate ... Marketplace Center had no reason to think that *382 the ATB would reverse position on any subsequent City attempts to halt its tax abatement appeals. Until the ATB did so, Marketplace Center was in the same position as it would have been absent Mr. Bress’ negligence; prosecuting appeals of denied tax abatements.
Plaintiffs’ Opposition to Defendants’ Motion for Summary Judgment, pp. 6-7.
Marketplace Center, however, stands in a considerably different position than the plaintiffs in Williams v. Ely. In Williams, the SJC pointed out that even if Ralph Williams, a professional estate planner, but not a lawyer, had heard of the Jewett case, he could not be expected to comprehend its consequences for his own situation.
Those are questions to which a lawyer, but not a lay person, might have known the answers. See Hendrickson v. Sears, 365 Mass. 83, 90 (1974). The inference certainly was not compelled that Ralph, who was not a lawyer, should reasonably have known them. See id.
Williams, supra, 423 Mass. at 475.
In significant contrast, Marketplace Center had Mintz, Levin, a highly regarded and sophisticated Boston law firm, acting for it in the tax abatement matters from at least April 28, 1998. Even without the City’s filings of new motions to dismiss on sec. 38D grounds, lawyers of Mintz, Levin’s quality should have known of the harm threatened by Bress’s negligence. Indeed, not only should they reasonably have known, they in fact actually knew, of the situation. They spent the better part of 1998 conferring with Bress and Sullivan, Jr., and battling before Appellate Tax Board on the precise issues relating to the failure to respond to the 38D requests and the City’s efforts to have the tax abatement appeals dismissed for that very reason.
Further, Mintz, Levin must be presumed to know the relevant law, including the comments by the SJC in Board of Assessors of Provincetown v. Vara-Sorrentino Realty Trust, 369 Mass. 692, 694-95 & n.4 (1976), about the use of the prior sec. 38B of c. 59, as a tool to compel information from abatement applicants and to bar their appeals for failure to comply.
Mintz, Levin, as Marketplace Center’s counsel, was Marketplace Center’s agent, and its knowledge— which here was far from casual — is binding on its client. See, e.g., Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 425 Mass. 63, 66-68 (1997).
Mintz, Levin knew that G.L.c. 59, sec. 38D provided that “(f]ailure of an owner ... of real property to comply with such request within sixty days after it has been made shall bar him from any statutory appeal under this chapter, unless such owner or lessee was unable to comply with such request for reasons beyond his control.” (Emphasis added.) And Mintz, Levin knew, as early as April 28, 1998, that the City of Boston was pressing the statutory bar by its demands for discovery and its motions to dismiss. In short, Marketplace Center, through its sophisticated attorneys, was well aware of Bress’s negligence and what the statute provided as a consequence thereof — the barring of any statutory appeal of its tax abatement claims. Indeed, in the Bress Affidavit, filed by Mintz, Levin in opposition to the December 1998 Motion to Dismiss, Bress essentially concedes his failure to provide the sec. 38D request responses.
Marketplace Center leans on too slender a reed when it argues that it suffered no harm, at least until after January 10, 1999.
At a minimum, although Mintz, Levin might not see it as harm, its billings of Marketplace Center during 1998 for the services it rendered in attempting to fight off the City’s discovery and motions to dismiss, constitutes sufficient harm for the purpose presented here. Marketplace Center was incurring legal fees in defense against the City’s motions to dismiss predicated on a claim that was based in considerable part on the failure of Bress to respond to the sec. 38D requests. This is sufficient harm. See Massachusetts Electric Co. v. Fletcher, Tilton & Whipple, 394 Mass. 265, 268-69 (1985). This is the “necessaiy coalescence of discovery and appreciable harm.” St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 379 F.Sup.2d 183, 188-89 (D.Mass. 2005).
There is no basis for tolling any statute of limitations in this case on an argument of “continuing representation.” See, e.g., Cantu v. St. Paul Cos., 401 Mass. 53, 58 (1987). Bress, the tortfeasor, stopped representing Marketplace Center in May of 1997, when he left Sullivan & Bress to pursue other interests, and stopped practicing law immediately thereafter. His representation discontinued then.

ORDER

For the foregoing reasons, the Motion for Summiy Judgment of Defendants Allen Bress and Sullivan & Bress, P.C., Paper #21, is ALLOWED as to all counts of the complaint, and judgment shall enter dismissing the same.

Section 38D was added by St. 1979, c. 797, sec. 16 and was made effective on January 1, 1980. The previous Section 38B, which was identical in language relating to the barring of statutory appeals for failure to provide requested information, was repealed by St. 1978, c. 580, sec. 30.